ROBERT T. BALTUS, Plaintiff-Appellant, v. WEAVER DIVISION OF KIDDE AND COMPANY, INC., Defendant-Appellee.

First District (4th Division)   No. 1—89—0423

Opinion filed June 7, 1990.

Leo M. Bleiman, P.C., of Chicago (Laura Monahan-Jarvis, of counsel), for appellant.

John W. Bell and Michael B. Gunzburg, both of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Robert T. Baltus, appeals from the order granting summary judgment in favor of defendant, Weaver Division of Kidde & Company, Inc. (Weaver). Plaintiff had filed a two-count complaint alleging theories of strict products liability and negligent manufacture and design of a transmission jack. He was injured when a transmission slipped off the jack and fell on his right hand. The strict liability action was dismissed, leaving the negligence count. Plaintiff failed to disclose any expert witness, pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220), and defendant moved for summary judgment on

the basis that plaintiff was unable to prove his case as a matter of law.

On appeal, Baltus contends that he was improperly barred from giving his own expert testimony as to Weaver's allegedly negligent manufacture and design of the jack. According to Baltus, his years of working with transmission jacks as an auto mechanic qualified him to give an expert opinion; that he gave such opinion during his deposition; and that it was for the jury to decide whether Weaver breached its applicable standard of care by failing to reasonably anticipate that the jack in question would be dangerously modified and by failing to warn against use of the jack without certain safety features.

Weaver counters that Baltus failed to rebut its motion and expert's affidavit with competent evidence; that Baltus was incompetent to render expert opinions; and that the product was destroyed and cannot be tested or examined.

We affirm.

BACKGROUND

According to the record, Baltus was injured at his place of employment, Ed Murphy Buick, when a transmission fell onto his right hand and forearm. The accident occurred on January 21, 1983.

On January 17, 1984, Baltus filed a two-count complaint against Weaver. Count I alleges in pertinent part that Weaver had the duty "to exercise ordinary care in the design, manufacture, sale and installation of its transmission jack machines," including the one involved in the accident. The complaint states that in violation of this duty, the equipment was and became "in a defective and dangerous condition" and that Baltus' injury was proximately caused by Weaver's acts or omissions, as follows:

> "(a) Carelessly and negligently failed to design its Model WA 140A transmission jack with appropriate safety guards and safety devices [;] (b) Carelessly and negligently failed to post warnings to the operators of the dangerous and defective condition of its machine [;] *** [and] (e) Were otherwise careless and negligent in the design, manufacture and installation of the transmission jack machine."

Count II of the complaint sounded in strict liability, alleging that the unreasonably dangerous defects existed at the time the transmission jack left the control of Weaver. This count was dismissed, amended, and dismissed with prejudice because it was untimely under section 13—213(b) of the product liability statute. Ill. Rev. Stat. 1983, ch. 110, par. 13—213(b).

The parties undertook discovery, during which Baltus was ordered to disclose all expert witnesses and answer interrogatories relating to the qualifications and opinions of that expert. This Baltus failed to do. Instead, in response to Weaver's motion to bar experts for failure to disclose pursuant to Supreme Court Rule 220, he took the position that he was competent to testify in his own behalf, not just as an occurrence witness, but also as an expert, based on his 20 years of experience using transmission jacks. The trial court granted the motion to bar experts.

Weaver subsequently moved for summary judgment against Baltus. In the motion, Weaver pointed out that the transmission jack involved in the occurrence had been manufactured in 1971, nearly 12 years before plaintiff's injury. By affidavit, Weaver denied performing any alterations or modifications from the date of manufacture to the date of the occurrence. Weaver next cited Baltus' deposition admissions that conceded that the jack was approximately 11 years old when he first began working at Ed Murphy Buick; that at the time of the occurrence, the jack was in a condition of disrepair and that the maintenance of the jack was not "up to par"; that at the time of the occurrence, one of the four "ears" or "clips" that hold the transmission in place was missing; that the foot pedal for operating the hydraulic pump was bent and the handles for adjusting the angle of the top platform were missing; that on prior occasions, Baltus had had difficulties in lowering the jack because the seals were very old; and that the mechanism for adjusting the top platform had been broken years prior to the occurrence, thereby allowing the platform to unintentionally tip.

In support of its motion for summary judgment, Weaver attached the affidavit of Mitchell Kaplan, a registered professional engineer with a background in mechanical engineering, who examined the jack in question on July 2, 1985. He stated his opinion that the jack was in a reasonably safe condition at the time it left the control of Weaver and that there were no dangerous or defective conditions existing therein at such time. He further gave his opinion that the jack was designed and manufactured in a reasonably safe manner.

Additionally, Weaver's motion for summary judgment argued that by Baltus' admission, the jack was in a poor state of repair and maintenance and that the manufacturer cannot be held liable where the intervention of a third party's alteration of the product causes injury.

In response, Baltus attacked Mitchell's affidavit for addressing only the strict products liability concerns that he claimed were not in

issue, such as the condition of the device when it left the manufacturer's control. Baltus argued that Mitchell's affidavit failed to address the manufacturer's failure to warn against removing safety devices or the manufacturer's anticipation that such removal or modifications would occur. Baltus also denied the relevance of the statement that he was unable to offer expert testimony as to the dangerous and defective condition of the machine at the time it left Weaver's control. Finally, Baltus cited his 20 years' experience as a transmission mechanic, arguing that he was competent to testify concerning the "condition of the machine before and during his use of it, to establish the custom and usage of such devices, leaving for the jury the question of proximate cause." In conclusion, Baltus contended that the removal or alteration of the transmission jack clips and the removal of the safety strap were reasonably foreseeable, material alterations of the jack which raised a fact question for the jury.

In reply, Weaver analogized the standard of care requirement in the pending case to that of a medical malpractice action, in that the burden is on plaintiff to come forward with evidence tending to show that the engineers who designed the jack failed to exercise the degree of care and skill of a reasonably competent engineer under the same or similar circumstances.

After oral argument on the motion, the trial court granted defendant's motion for summary judgment. From the judge's comments it is clear that he believed that Baltus would need expert testimony that the type of modifications allegedly made in the pending case were foreseeable and actionable. The judge stated that plaintiff would have to show that the product in question was "negligently manufactured at the time it was manufactured according to what was common in the industry or what was known in the industry, and [he would] need an expert to testify to that." The judge noted that Baltus would need someone to say that the jack was defective because the removal of the clips should have been anticipated by the manufacturer

> "and that would have to include testimony as to what other manufacturers were doing and what alternatives were available to the manufacturer, exactly how the modification was done and what should have been done to guard against that modification. *** *In a products liability case at the summary judgment stage the Plaintiff must produce sufficient evidence to establish the elements necessary to state forth a prima facie case of negligence* [citation]. In this case the Plaintiff's expert has been barred from testimony at trial. Moreover, the Plain-

tiff has not offered any results of the examination of the jack. Without an examination of the product to determine if the problem was a result of a manufacturing defect, the Plaintiff could not prove directly or inferentially a claim based in negligence or in strict liability [citation]. Plaintiff is required to come forward with some evidence which would create a question of fact as to the condition of the product when it left Defendant's control [citation]. Plaintiff has not offered such information, and therefore, the Defendant's motion should be granted." (Emphasis added.)

OPINION

■■ On motion for summary judgment the dispositive question is whether the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to a material fact, entitling the moving party to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Rivera v. Mahogony Corp.* (1986), 145 Ill. App. 3d 213, 494 N.E.2d 660.) Such remedy must be cautiously granted so that a party's right to trial is not usurped in the presence of material, conflicting evidentiary facts and inferences. (*Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271, 1274.) The party opposing summary judgment must marshal evidentiary facts to defeat judgment, and, in cases in which expert opinion is necessary to sustain allegations of the complaint, summary judgment is proper when the plaintiff has failed to present an expert opinion or indicate that such expert opinion would be forthcoming. *E.g., Piquette v. Midtown Anesthesia Associates* (1989), 192 Ill. App. 3d 219, 548 N.E.2d 659 (evidence of a broken tooth cap following a laryngoscopy was insufficient evidence of negligence and expert testimony would be required to establish a deviation from the standard of care; expert testimony also required on issue of failure to warn); *Gordon v. Nasr* (1989), 182 Ill. App. 3d 964, 538 N.E.2d 843.

Baltus bases his appeal on the issue of his suitability to give expert testimony in support of his case, arguing that he was not required to disclose himself under Supreme Court Rule 220 because he was an occurrence witness and gave his opinion during his deposition. Alternatively, he contends that expert testimony is not needed in this case. Additionally, he argues that he raised a factual issue as to the foreseeability that the jack would be modified in the manner that it was and that injury would result.

Weaver maintains that the trial court correctly found in its favor on summary judgment since Baltus failed to make the necessary

showing of evidentiary facts in support of his claim; failed to show that Weaver breached any duty; failed to present any evidence relating to the condition of the jack in issue; failed to rebut Weaver's expert's affidavit; and failed to preserve the product. Additionally, Weaver asserts that Baltus is incompetent to give expert opinion testimony as to the alleged flaws in the manufacture and design of the transmission jack.

These facts are undisputed, as evidenced by the record. Baltus has no personal knowledge of the condition of the transmission jack when it left Weaver. There are no facts to establish that the machine was in other than in good condition when it left Weaver, as far as its general operating ability. Weaver's unrebutted affidavit establishes that Weaver did not make any modifications or alterations to the jack since its sale approximately 12 years before the occurrence. The record contains a brochure of the model of transmission jack in issue, which contains several illustrations of the jack and its features, as well as special adaptors to use with the jack.

The machine has four "U"-shaped "clips" or "ears," as the parties have referred to them, which the brochure terms "adjustable supports." These supports are attached to a platform or table of the jack and are what the transmissions rest on or in when they are being repaired. There are four shown, one at each corner of the table. Another illustration shows a "safety chain adjustment" and in bold face type there is a warning to use the safety chain with all adaptors. The table of the jack rotates or tilts for better positioning. In addition, there is a foot pedal that lowers or raises the table. This table is to be centered under the transmission, and the adjustable supports are to be positioned and secured. The table is then raised and tilted or moved as necessary, "until the supports firmly contact the transmission." In the fully lowered position "the unit itself makes a convenient work table for many service operations, or it can be used in transporting the transmission to another work area in the shop."

Baltus admitted in his deposition that the transmission jack was in a state of disrepair and that he first began using it approximately 11 years after its manufacture. He described parts that were broken off or missing and the fact that there was a leak of hydraulic fluid.

In his complaint, Baltus alleges in conclusory fashion that Weaver failed to use ordinary care in manufacturing the device because Weaver "carelessly and negligently failed to design its Model WA 140A transmission jack with appropriate safety guards and safety devices" and "failed to post warnings to the operators of the dangerous and defective condition of its machine." He does not specify

what safety guards or devices were necessary to render the machine reasonably safe. Nor does he explain in what manner it was unreasonably dangerous for failure to function in the manner reasonably to be expected in light of its nature and function. The record contains no further specifics on this point, except Baltus' opinion that the four adjustable supports should have been permanently affixed to the table of the transmission jack, rather than being removable.

## I

To determine whether Baltus has established sufficient evidentiary facts on each element of his claim to withstand the motion for summary judgment, we must determine what those elements are and whether or not expert testimony is necessary to sustain the allegations.

### DUTY, BREACH OF DUTY, AND PROXIMATE CAUSE OF INJURY

In products liability actions, a manufacturer has a nondelegable duty to produce a product that is reasonably safe. (*Phillips v. United States Waco Corp.* (1987), 163 Ill. App. 3d 410, 516 N.E.2d 670.) As the *Phillips* court stated, the distinction between claims in strict liability and negligence lies in the fault concept; in strict liability, the focus is on the defective condition of the product, regardless of fault, but in negligence, defendant's fault is additionally in issue. See *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 117-18, 454 N.E.2d 197, 203.

The duty to manufacture a "reasonably" safe product does not require the safest design possible (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859), nor one incapable of causing injury. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211, 384 N.E.2d 368, 372 (Sign post manufacturer had no legal duty to design posts with "break-away" feature, although such design was available, because risk of injury involved in motorist's collision with sign post was normal risk of collision with stationary object and there was no evidence that post subjected drivers to unreasonable or unexpected risks).) The issue of whether a product is unreasonably dangerous depends on the facts, normally an issue for the jury. Nevertheless, our supreme court has held that a plaintiff "must present pertinent evidence, such as an alternative design which is economical, practical and effective, to the fact finder, who determines whether the complained-of condition was an unreasonably dangerous defect." (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 162-63, 390 N.E.2d 859, 863.) *Kerns* quoted with approval *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 319,

281 N.E.2d 749, 753, " 'In the development of product's [*sic*] liability principles design alternatives are appropriately considered whether reasonable care is the basis of liability or where liability is predicated upon strict tort liability. [Citation.] In both cases it appears that policy considerations are involved which shift the emphasis from the defendant manufacturer's conduct to the character of the product. Such change in emphasis furnishes additional reasons for permitting evidence of alternative designs in a strict tort liability case.' " *Kerns*, 76 Ill. 2d 154, 163, 390 N.E.2d 859, 863.

■■ We believe that to recover from Weaver for negligent manufacture of the jack, based on defective design alone, Baltus must establish that Weaver deviated from the standard of care that other manufacturers of transmission jacks followed at the time the machine was designed, or some evidence that Weaver knew or should have known, in the exercise of ordinary care, that its product was unreasonably dangerous and failed to warn of its dangerous propensity. (*Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690 (That a product is not reasonably safe because of design defect may be shown by availability and feasibility of alternative designs at time of manufacture, or that design fails to conform to industry standards, or that it fails to meet design criteria of government regulations).) As for the failure to warn issue, see *Woodill v. Parke-Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194 (failure to warn in strict liability requires evidence of defendant's knowledge of dangerous propensity, based on the objective standard of knowledge in the industry; negligence focuses on the particular defendant's knowledge).

■ In both strict liability and negligence actions, the threshold question of unreasonably dangerous design is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function. (*E.g.*, *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.) Foreseeability of injury alone does not define a manufacturer's duty; strict liability for an unreasonably dangerous product applies "only when the product is 'dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] \*\*\*, with the ordinary knowledge common to the community as to its characteristics.' (Emphasis added.)" (*Hunt v. Blasius*, 74 Ill. 2d at 211-12, 384 N.E.2d at 372, quoting Restatement (Second) of Torts, §402A, comment *i* (1965).) In *Foster v. Devilbiss Co.* (1988), 174 Ill. App. 3d 359, 529 N.E.2d 581, the court allowed the jury to consider whether the removal of safety devices from a paint spray gun was reasonably foreseeable. Plaintiff's expert, however, testified

that the gun itself was unreasonably dangerous without certain safety devices. He also gave the factual basis for that opinion. Moreover, "[i]n determining whether a product is unreasonably dangerous, the focus should be placed on the product itself and not the availability of any additional safety devices." (*Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 638, 388 N.E.2d 964, 967) (holding that safety glasses lacking side safety shields were not unreasonably dangerous, although disputed facts regarding manufacturer's knowledge of problem gave rise to fact issue on breach of duty to warn).

Since negligence does not permit liability without fault, it is not enough to say that there may have been a better way to design the jack, without giving evidence of a standard of care by which to measure Weaver's design and without showing a deviation from that standard by evidence of record.

■ Leaving aside the question of expert testimony for the moment, we note that even if Baltus created a genuine issue of material fact as to breach of the applicable standard of care, he must also establish an evidentiary base for the proximate cause element of his claim in order to survive the motion for summary judgment. We will not presume a causal link between the alleged design defect (the removability of the adjustable supports and/or absence of warnings) and Baltus' injury.

In *Phillips v. United States Waco Corp.*, the appellate court affirmed summary judgment in favor of a scaffold manufacturer who had been sued under theories of strict liability and negligent manufacture. There the injured plaintiff claimed that the scaffold he had been standing on broke apart, causing him to fall. He said that one of the ends came loose, the pin came out. He did not, however, examine the scaffold, nor was it preserved for examination by the experts. He also admitted that the scaffold might have been wired together by his co-workers to hold it together. Plaintiff retained an expert witness who examined a representative scaffold and stated his opinion that it was defectively designed in that no horizontal cross bracing was provided to prevent "racking." (Racking refers to the process by which a rectangle distorts into a parallelogram, leading to instability.) In contrast, defendant manufacturer's expert, a mechanical engineer, stated in an affidavit that no accident would have occurred if the plaintiff had used a properly constructed and assembled scaffold. He also gave several possible causes for plaintiff's accident.

Although both sides had retained experts, and although they were in disagreement as to the cause of the accident and the safety of the scaffold, the trial court nevertheless granted summary judg-

ment in favor of defendant.

The appellate court affirmed the trial court, holding that plaintiff "was required to present some evidence concerning the absence of abnormal use and the condition of the product when it left the defendant's control and/or fault of the defendant in producing an unreasonably dangerous product [citation]. While the exact cause of the injury need not be proven, *plaintiff must establish a credible basis for a reasonable inference that a condition of the product proximately caused the injury and for elimination of reasonable secondary causes* [citation]. No inference of defectiveness arises from the mere fact that an injury occurred." (Emphasis added.) *Phillips*, 163 Ill. App. 3d at 416-17, 516 N.E.2d at 674.

The *Phillips* court further noted that while a *prima facie* case may be conclusively established from circumstantial evidence, "that evidence must have a reasonable probative basis, *for the jury will not be permitted to engage in speculation.*" (Emphasis added.) (163 Ill. App. 3d at 417, 516 N.E.2d at 674.) The court held that the record demonstrated that plaintiff "did not produce evidentiary facts to support his case and that, hence, the circuit court correctly entered summary judgment in favor of the defendant." 163 Ill. App. 3d at 417, 516 N.E.2d at 674.

In the pending case, plaintiff concededly cannot set forth a specific defect in the product itself, nor can he produce the actual transmission jack that caused his injury. His entire case hinges on his own, bare opinion that the manufacturer breached a duty to him by failing to permanently affix the adjustable supports to the table of the jack or, in the alternative, failing to post warnings that the supports and the safety strap should not be removed. Like the *Phillips* plaintiff, Baltus admits that the 12-year-old device in question had sustained damage unrelated to the alleged design defect. Indeed, the decrepit state of the jack came out in his own deposition testimony. One such admission was that the mechanism for adjusting the top platform had been broken for years beforehand, allowing it to unintentionally tip.

The use of the jack and its poor condition at the time of the occurrence are relevant to the issue of proximate cause. While Baltus asserts that proximate cause is a question for the jury—an accurate statement when a genuine issue of material fact exists—he fails to set out an *evidentiary basis* tending to show that his injury was proximately caused by the alleged design defect. Excerpts in the record from his deposition indicate that at the time the transmission fell on his hand he was in the process of lifting it and had turned to look

for his partner for help. He had taken one hand off of the transmission. We do not have the benefit of the full transcripts of the depositions and decline to speculate from these statements as to the causal link between the missing support and his injury. However, the simple statement that proximate cause is for the jury to decide does not substitute for an affirmative factual base from which to infer such proximate cause. We do not imply that Baltus must prove his case at the summary judgment stage; however, we must be able to discern a *prima facie* case from the facts of record. *E.g., Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1059-60, 473 N.E.2d 444, 451 (while *prima facie* case of strict liability possibly may be shown absent the defective product itself or absent expert testimony concerning a specific defect, "plaintiff must present *some* evidence to raise a material issue as to the absence of abnormal use and the elimination of reasonable secondary causes," both to show the condition of the product when it left defendant's control and to show that the alleged defect proximately caused the injury). See also *Hare v. Foster G. McGaw Hospital* (1989), 192 Ill. App. 3d 1031, 549 N.E.2d 778 (directed verdict for defendant doctor in medical negligence suit affirmed where plaintiff failed to produce evidence of proximate cause).

■ On the failure to give warnings, inadequate warnings in strict liability cases may be actionable if the product has a latent defect or a dangerous propensity of which a user would normally be unaware. Hence, in cases involving pharmaceuticals, warnings may be necessary to protect persons unfamiliar with side effects or other risks. (See, *e.g., Woodill v. Parke-Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194.) However, there is no duty to warn where the product is not defectively designed or manufactured and the danger is an open and obvious propensity of the product. (*Zidek v. General Motors Corp.* (1978), 66 Ill. App. 3d 982, 384 N.E.2d 509.) Here, Baltus used the jack on a regular basis and expressed his knowledge that the supports should not be removed when the transmissions were resting on them. The risk of using fewer supports than included with the jack would therefore appear obvious; this is not a case of a latent defect or unexpected risk. Nor does Baltus explain how the presence of a warning against using the jack without its supports or without the safety strap would have rendered the jack safer or prevented his injury.

■ We believe that the above authorities support the grant of summary judgment in the pending case. We do not believe that Baltus has presented sufficient evidentiary facts, circumstantial or otherwise, to establish a *prima facie* case of negligent manufacture

in order to defeat the motion for summary judgment.

## II

Although our holding above well may be dispositive, we further address the issue of expert testimony because the parties disagree as to whether it is required and whether Baltus himself may give expert opinion testimony.

### THE NEED FOR EXPERT TESTIMONY

Clearly, the parties and the trial court assumed the need for expert opinion as to the allegedly dangerous condition of the jack. Baltus did not disclose an expert witness, nor did he answer interrogatories designed to discover the basis of the expert opinion and the qualifications of the expert. Rather, he asserted his own competence to render an expert opinion as to the alleged design defect, based solely on his years of experience in buying and using transmission jacks in the repair of automobile transmissions. Before addressing the narrower question of his competence as an expert witness, however, we consider whether the case requires expert opinion at all.

■■ Some negligence actions do not require expert testimony because they allege "ordinary" negligence, in the common experience and understanding of the jurors. An automobile collision caused by a driver's failure to stop at a red light would hardly require expert opinion, although a complicated reconstruction of a collision in another case might call for such evidence. The specific facts and issues involved determine whether expert opinion testimony is necessary or desirable. See *Lovelace v. Four Lakes Development Co.* (1988), 170 Ill. App. 3d 378, 533 N.E.2d 386 (In negligence suit in which plaintiff fell on defendant's outdoor ice rink, trial court properly excluded expert's opinion based on the closure of other area ice rinks where skater did not establish that the conditions at the other rinks were comparable with the one at which she was injured and expert's opinion was based on substantively inadmissible data which was not reasonably relied on).

Products liability actions, however, often involve specialized knowledge or expertise outside the layman's knowledge. Manufacturing negligence resulting in an unreasonably dangerous product seems particularly appropriate for expert opinion. See, *e.g., Pease v. Ace Hardware Home Center of Round Lake No. 252c* (1986), 147 Ill. App. 3d 546, 498 N.E.2d 343 (expert testimony regarding design alternatives for constructing display rack and need for warnings was properly admitted to aid jury in deciding products liability action);

*Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749 (expert witness' testimony regarding design alternatives at time of manufacture should have been admitted and *its exclusion was reversible error*).

*Varady v. Guardian Co.* (1987), 153 Ill. App. 3d 1062, 506 N.E.2d 708, which Baltus cites in support of his position that expert opinion is not needed, does not aid him. In that strict liability action, plaintiff's evidence established that during normal use of her aluminum crutches, the left crutch buckled or collapsed, causing her to fall. Defendant manufacturer's expert testified that if the crutch collapsed under a downward load while being used in the manner intended, it would be because of a defect in the metal. Accordingly, the appellate court reversed the trial court's entry of judgment notwithstanding the verdict in favor of defendant manufacturer. Unlike the situation in *Varady*, here there is no evidence of a defect in the jack itself (apart from the foreseeability of the removal of a support). In addition, there is substantial evidence that the jack was not being used in the manner intended.

Baltus cites no other cases in support of his assertion that he need not offer expert evidence as to the unreasonably dangerous design of the jack. Nor do we find any logical merit to the suggestion that the "defect" is "obvious" and therefore within the jury's common understanding and experience. It may appear "obvious" that a transmission platform with three instead of four supports may become "dangerous." Likewise, it may seem "obvious" that the removability of some of the supports was "foreseeable." The issue is not, however, whether the missing support rendered the jack dangerous. Nor is the issue whether the foreseeability that a support would be removed rendered its *design* dangerous; that simply begs the question. The issue is: Does the mere fact that the adjustable supports are removable render the jack *unreasonably* dangerous? Without expert testimony as to the function(s) of the transmission jack, design alternatives that were available to accomplish the same function(s) in a safer manner, or at least some knowledge attributable to Weaver that its design was unreasonably dangerous, we cannot agree that the jury may simply speculate that it was in fact an unreasonably dangerous machine, due to its design. See *Cornstubble v. Ford Motor Co.* (1988), 178 Ill. App. 3d 20, 532 N.E.2d 884 (Plaintiff must prove not only that the product was not reasonably safe but that defendant knew or in the exercise of ordinary care should have known that the product was not reasonably safe).

For that reason we agree with defendant that product liabil-

ity cases are analogous to those involving medical malpractice: Both types of cases involve specialized knowledge that bear directly on the standard of care in the community. While some instances of medical malpractice need no expert opinion that a doctor has fallen below the standard of care (such as a case in which an instrument is left in the patient after surgery), expert opinion usually is required to aid the jury in determining that the pertinent standard of care has been breached. *E.g.*, *Piquette v. Midtown Anesthesia Associates* (1989), 192 Ill. App. 3d 219, 548 N.E.2d 659; *Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 543 N.E.2d 868 (testimony by another doctor that he would have done something different is not sufficient to establish a *prima facie* case).

We do not imply that all cases of negligent manufacture or design require expert opinion as to the unreasonably dangerous condition of the product. For example, if a chair is designed to be easily collapsible, for portability, but has the tendency to collapse when someone sits on it, an expert in chair design may not be needed to help the jury decide that the design is unreasonably dangerous; it does not function in the manner expected and is in fact unsafe. *Cf. Collins v. Interroyal Corp.* (1984), 126 Ill. App. 3d 244, 466 N.E.2d 1191 (expert testimony indicated that design of adjustable chair was unreasonably dangerous because self-tapping screw in leg had tendency to loosen and fall out during normal use, allowing chair leg to telescope and chair to collapse; evidence also indicated that chair design was later changed to include a nut and bolt assembly to keep screw in place and prevent telescoping).

In this case, however, the allegedly defective design is of a different order. In normal and intended use the four supports would be in place, as they are an integral part of the jack's assembly. Unlike the safety devices attached to the paint spray gun in *Devilbiss v. Foster*, the supports are not, as such, safety devices that were added on to the jack to keep it from being unreasonably dangerous in its basic function. The transmission is held to the table of the jack by the supports, which apparently are adjustable to accommodate different size transmissions. Without expert testimony resting on a foundation of facts regarding this particular design, the jury would be left to speculate that it was unreasonably dangerous *solely* because the supports were removable. (To say that it was "foreseeable" that they would be removed assumes that the removability of the supports *ipso facto* renders the jack unreasonably dangerous as manufactured.) In fact, the record indicates that the jack may have been designed to have other uses, such as a worktable. (See *Savage Manufacturing & Sales,*

*Inc. v. Doser* (1989), 184 Ill. App. 3d 405, 540 N.E.2d 402, *appeal allowed* (1989), 127 Ill. 2d 641, 545 N.E.2d 131 (Jury verdict in strict liability case against manufacturer reversed on appeal because multiuse press was not unreasonably dangerous for lack of safety guards at point of operation, when plaintiff's own expert admitted that only a unifunctional press could have been equipped with such devices).) We conclude that Baltus cannot establish a breach of the standard of care in this case without expert testimony.

██ █ The final point for our consideration, therefore, is whether he is qualified to give expert testimony. There is no presumption that a witness is qualified to give an opinion and the offering party must show he possesses the necessary learning, skill, or experience. (*Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill. App. 3d 356, 438 N.E.2d 1217.) Since Baltus put his competence as an expert in issue in his response to Weaver's motion to bar experts for lack of disclosure, he had the burden of presenting himself as a qualified expert on the material issues. This he failed to do. His only recitation of qualifications was 20 years as an auto mechanic who used transmission jacks on a regular basis. That may give him expertise in their use, but it does not mean he has the knowledge, skills, and experience as a manufacturer or designer of the equipment. *Collins v. Hyster Co.* (1988), 174 Ill. App. 3d 972, 529 N.E.2d 303, *appeal denied* (1989), 124 Ill. 2d 554, 535 N.E.2d 913 (In forklift design case, witness with no knowledge of industry standards at the time of the manufacture of the product in question is unqualified to testify about any specifically alleged acts of negligence on the manufacturer's part).

Moreover, he would be unable to give his *personal* opinion as to the safety of the device as designed, an ultimate issue, if he were not qualified as an expert. (See, *e.g., Davis v. International Harvester Co.* (1988), 167 Ill. App. 3d 814, 521 N.E.2d 1282, *appeal denied* (1988), 122 Ill. 2d 572, 530 N.E.2d 242 (Occurrence witness, an experienced truck driver, was not qualified as an expert to give an opinion regarding the safety of a semitrailer cab's design in a products liability suit against the manufacturer where the witness had no special education or expertise that qualified him as an expert for evaluating vehicle safety); *cf. Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257 (Agricultural engineering professor was a qualified expert witness who could testify regarding the need for safety devices on a farm implement because of his knowledge of the availability and adaptability of safety shields for the implement). See also *Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill.

App. 3d 356, 438 N.E.2d 1217 (In products liability action against gasoline can manufacturer, witness who had a degree in civil engineering but no mechanical engineering and who had never designed gasoline cans, nor been involved in their manufacture, was unqualified to render expert opinion regarding defects in the design and manufacture of the cans).) The standard to which the manufacturer is held is that degree of knowledge and skill of an expert (*Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 639, 388 N.E.2d 964, 968); therefore, one challenging such design as being unreasonably dangerous should be qualified as an expert also, unless the design is so obviously defective that it is within the common understanding of nonexperts. Since we have concluded that the defect alleged in the pending case is not so obvious as to be within the common understanding of nonexperts, we also conclude that plaintiff's personal opinion is not sufficient as that of an expert. We cannot presume a breach of duty in negligent manufacture based on the conclusory statement that the supports should not be removed, or removable, for any reason.

In *Loy v. Firestone Tire & Rubber Co.* (1988), 168 Ill. App. 3d 503, 522 N.E.2d 848, the trial court granted summary judgment in favor of a manufacturer of a ratchet wrench when the wrench itself was unavailable; there was no expert testimony that it was defective; there was evidence of abnormal use; and there was no inference of the presence or absence of a defect when it left the manufacturer. Similarly, in this case there is no competent evidence in support of the assertion that the machine as designed is unreasonably dangerous. Mere speculation is inadequate. Baltus' burden in resisting summary judgment is to muster evidentiary facts in support of a *prima facie* case, to justify submitting the matter to a jury. We conclude that he has failed to do so.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.