Constance **DEIMER**, Plaintiff–Appellant,

v.

**CINCINNATI SUB–ZERO PRODUCTS, INC.**, Defendant–Appellee.

No. 92–1030.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1992.

Decided April 6, 1993.

Rehearing Denied May 28, 1993.

---

Robert A. Holstein, David L. Poindexter (argued), Holstein, Mack & Klein, Chicago, IL, for plaintiff-appellant.

Jeffrey Singer (argued), Paul E. Wojcicki, Segal, McCambridge, Singer & Mahoney, Chicago, IL, for defendant-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

This appeal arises out of a products liability negligence action that appellant Constance Deimer brought against appellee Cincinnati Sub–Zero Products (Sub–Zero) for personal injuries she sustained while moving one of Sub–Zero's products. The district court granted Sub–Zero's motion for summary judgment. We affirm in part and reverse and remand in part.

I

BACKGROUND

Ms. Deimer was a surgical nurse at Northwestern Memorial Hospital in Chicago, Illinois. One of Ms. Deimer's duties was to retrieve and bring to the operating room the "Blanketrol," a machine manufac-

tured by Sub–Zero. The Blanketrol is a device used to regulate body temperature during surgery by heating and cooling blankets to place upon the patients. The machine contains several gallons of water that are heated or cooled within the unit and then pumped through connecting hoses into the blankets. The Blanketrol weighs approximately 185 pounds when full of water. The machine uses a ten-foot power cord, which was designed to be wrapped and secured with a velcro strap attached to the rear panel. Because it was designed to be mobile, the Blanketrol is mounted upon 4 five-inch casters that rotate 360 degrees.

On the night of Ms. Deimer's accident, she was working in the hospital operating room and was assigned to retrieve the Blanketrol. According to the district court, the machine was stationed along the wall in the hallway opposite the operating room. It was against the wall with the power cord lying on top. As Ms. Deimer moved the machine toward the operating room, she stepped on the power cord, which had fallen off the machine. Consequently, Ms. Deimer tripped and fell. She fell onto the cord and the entire machine fell onto her knee. As a result of this accident, Ms. Deimer suffered various injuries and brought suit against Sub–Zero on the alternative theories of negligent product design and strict liability. Her negligent product design count was based upon two theories. First, Ms. Deimer asserted the machine had an inadequate and detachable cord wrap. Second, she claimed the machine was top-heavy and unstable. Ms. Deimer brought suit in Illinois state court; however, Sub–Zero removed the action to federal court under diversity jurisdiction.

## II

## DISTRICT COURT PROCEEDINGS

The strict liability count was resolved on summary disposition by the district court and is not before us on appeal. The district court initially denied Sub–Zero's motion for summary judgment on the negligence count. However, when Sub–Zero filed another motion, the court granted summary judgment with respect to Ms. Deimer's claim that the cord wrap device was negligently designed. In the court's view, the plaintiff's deposition testimony that she did not look for the cord wrap on the day of the accident precluded any claim that this alleged defect was the proximate cause of her injury. Trial then commenced on the remainder of the negligence count. Because the court had granted summary judgment on the cord wrap defect issue, Ms. Deimer's expert witness, Thomas Knott, was prohibited from testifying at trial on that issue. However, Mr. Knott was allowed to offer testimony that, by design, the Blanketrol was top-heavy and generally unstable. Nevertheless, at the close of Ms. Deimer's case, the district court granted judgment as a matter of law for Sub–Zero. The case is now before us on appeal from the final decision of the district court. See 28 U.S.C. § 1291.

## III

## DISCUSSION

### A. Standard of Review

We review de novo both the grant of partial summary judgment and the directed verdict. The evidence, when taken in the light most favorable to Ms. Deimer, the non-movant, must be such that no genuine issue of material fact exists that would allow a jury to grant her relief. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). When reviewing directed verdicts in diversity cases, we use the state standard of review. See Williams v. Jader Fuel Co., 944 F.2d 1388, 1393 (7th Cir.1991), cert. denied, — U.S. —, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992).[1] In Illinois, "[a] verdict should not

---

1. We note that the result would be no different under the federal standard:

   [T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict....

   If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.

   Liberty Lobby, 477 U.S. at 250–51, 106 S.Ct. at 2511.

be directed unless 'all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.'" *Id.* at 1393 (quoting *Pedrick v. Peoria & E.R.R.*, 37 Ill.2d 494, 229 N.E.2d 504, 513 (1967)).

### B. *Partial Summary Judgment on Defective Cord Wrap Claim*

Ms. Deimer submits that the district court erred in granting partial summary judgment to Sub–Zero on the claim of the defective cord wrap. The district court held that Ms. Deimer had failed to demonstrate that there was a genuine issue of triable fact as to whether the cord wrap had caused her injury. Under Illinois law, proximate causation is a necessary element to prevail in a negligence action and cannot be presumed by the court. *See Baltus v. Weaver Div. of Kidde & Co.*, 199 Ill.App.3d 821, 145 Ill.Dec. 810, 815, 557 N.E.2d 580, 585 (1990). In its ruling, the district court noted that Ms. Deimer had stated in her deposition that "she never attempted to use the cord securing device, and in fact, did not even look to see if the machine had such a device." Mem.Op. at 11. The court concluded that, even if the device had been defective, Ms. Deimer's failure to attempt to use the cord wrap precluded any possible causation between the alleged defect and her injuries.

After the district court's ruling, Ms. Deimer filed a motion for reconsideration. In support of the motion, she contended, by affidavit executed after the district court's rendition of summary judgment, that she did not search for any cord-securing device because she was aware that this particular machine had no such device. She claimed to know of this absence because she had worked with the machine on other occasions and had discussed the matter with colleagues. According to Ms. Deimer, all she meant to convey in her deposition was that she had never conducted a formal search for a cord wrap device.

The district court treated this motion to reconsider as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). This motion had not been filed, however, within the ten-day time limit required by that Rule. The court noted that it was without the power to extend the ten-day period for the filing of a Rule 59(e) motion. Acknowledging that, under certain circumstances, relief might still be available under Rule 60(b), the district court nevertheless declined to act favorably on her motion. It noted, among other considerations, that Ms. Deimer had been given sufficient opportunity to present her own interpretation of her deposition testimony in response to Sub–Zero's motion for summary judgment. Before this court, Ms. Deimer contends that, because the district court had ruled in her favor in an earlier motion for summary judgment by Sub–Zero, the matter was foreclosed from further consideration in the subsequent motion and she was under no obligation to readdress the issue.

Upon examination of the record, we cannot accept Ms. Deimer's contention. Sub–Zero's second motion for summary judgment again presented the issue of whether Ms. Deimer had examined the machine for a cord wrap prior to the accident. It was therefore very clear to the parties that the district court was being invited to revisit the matter. Accordingly, it was incumbent upon Ms. Deimer to address the matter in opposing the motion or at least to refer to her previous submission on this issue during the pendency of the earlier summary judgment.

Nevertheless, another consideration requires that we not hold, as Sub–Zero suggests, that Ms. Deimer's failure to clarify her deposition in her response to the second motion for summary judgment ends the matter. The district court denied her motion for reconsideration and refused to consider her clarifying affidavit because the time strictures of Rule 59(e) precluded its consideration. In our view, however, it would have been more appropriate for the district court to have considered its earlier ruling with respect to the cord wrap as a ruling under Rule 56(d). Such a ruling is not a "judgment" within the meaning of

the Rules. Fed.R.Civ.P. 54(a).[2] Accordingly, the district court's "partial summary judgment" was not subject to the strictures of Rule 59(e), and the district court retained the power to deal with any aspect of the lawsuit until its termination by the entry of a final and appealable judgment. *See* 10A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2737, at 455–56 (2d ed. 1983); *see also Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.*, 721 F.2d 197, 200 (7th Cir.1983) ("The word 'judgment' in the term 'partial summary judgment' is a misnomer. A partial summary judgment is merely an order deciding one or more issues in advance of trial...."). While Ms. Deimer's tardiness in submitting her motion for reconsideration and the accompanying clarification was a valid consideration for the district court to weigh in its determination of the matter, its misapprehension of the procedural context in which it ruled resulted in its adopting a far more restrictive view of its discretion than was necessary.

■ Furthermore, we do not believe that, if the district court had reconsidered whether the cord wrap device was negligently designed, summary judgment would have been appropriate, especially in light of the clarifying affidavit.[3] Rather, we believe that the district court was correct when, upon ruling on the first motion for summary judgment, it determined that the adequacy of a removable cord wrap for hospital use was a matter for the jury. In this regard, the district court was correct in its estimation that *Lara v. Thoro–Matic*

*Vacuum Systems, Inc.*, 194 Ill.App.3d 781, 141 Ill.Dec. 397, 551 N.E.2d 390 (1990), while instructive, was not controlling. As the district court noted, the issue is whether, *under the circumstances of a hospital emergency,* a reasonably prudent operating room staff nurse would have taken more care to focus on the electrical cord sitting on top of the Blanketrol machine. It may be possible for the defendant to establish that the cord was an obvious danger. It may also be possible for the defendant to establish the contributory negligence of Ms. Deimer. These matters cannot, however, be determined on the basis of the present record.

## C. *Directed Verdict at Close of Plaintiff's Case*

■ While we believe that the district court must once again confront the matter of the cord wrap, we do not believe that the district court committed error when it refused to permit the jury to consider Ms. Deimer's alternate contention that her injury was due to the instability of the Blanketrol and the failure of Sub–Zero to warn users of that condition.

The district court permitted Ms. Deimer's proffered expert witness' testimony to stand despite that witness' unimpressive credentials and superficial analysis. However, the court was of the view that his testimony did not afford the jury a basis for concluding that Sub–Zero was negligent in the manufacture of the Blanketrol or that Ms. Deimer's injury was proximately caused by any defect resulting from that negligence.

**2.** Rule 54(a) provides in pertinent part:
"Judgment" as used in these rules includes a decree and any order from which an appeal lies.
Fed.R.Civ.P. 54(a).

**3.** As we noted recently in *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293 (7th Cir.1993), " 'a party may avoid summary judgment by submitting an affidavit that conflicts with its earlier deposition testimony in only a limited number of circumstances.' " *Id.* at 1297 (quoting *Adelman–Tremblay v. Jewel Co., Inc.*, 859 F.2d 517, 520 (7th Cir.1988)). One of those "limited number of circumstances" is "to clarify ambiguous or confusing deposition testimony." *Adelman–*

*Tremblay,* 859 F.2d at 520. Our study of the entire record makes it clear that the affidavit served such a purpose here. Ms. Deimer testified that she had worked frequently with these machines and had never seen a cord wrap on any of them. Plaintiff's Deposition at 72. She was *then* asked if she ever had "searched," Plaintiff's Deposition at 73, for such a device. In this context, she answered in the negative, a response she later sought to clarify by noting that she was aware of the machine's features from using it but had never conducted a formal examination of the machine for the sole purpose of finding a device to secure the power cord. Plaintiff's Supp. Aff. at ¶ 4.

After independent study of the record, we are convinced that the district court was quite right when it determined that Mr. Knott's theory that the machine was defectively designed was premised upon factual circumstances that, according to the evidence of record, simply did not exist at the time of the accident. As the district court noted, Ms. Deimer was handling the machine in a manner that differed significantly from the assumptions made by Mr. Knott. Our independent study of the record also convinces us that no evidence of record supports the assertion that the machine fell on Ms. Deimer because of the machine's instability. The record only supports the conclusion that Ms. Deimer's cord-induced fall caused the machine to land on top of her knee.

## Conclusion

The district court correctly concluded that Sub–Zero was entitled to judgment as a matter of law on the issue of whether the Blanketrol was unstable and whether any such instability contributed to Ms. Deimer's injury. However, the district court misapprehended the procedural context in which it considered Ms. Deimer's motion for reconsideration with respect to her inspection of the machine for a cord wrap. If the district court determines that it ought to reconsider despite Ms. Deimer's delay in submitting her clarification, the suitability of the cord wrap for hospital use presents a controverted issue of fact that precludes a grant of summary judgment.

Accordingly, the judgment of the district court is affirmed in part and reversed and remanded in part. The parties shall bear their own costs of this appeal.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

ESCHBACH, Senior Circuit Judge, dissenting.

While I join that part of the majority's opinion affirming the directed verdict, I respectfully dissent from the portion that reverses the district court. While I have difficulty discerning from the majority opinion exactly what portion of the district court's decision it is reversing, I conclude that the majority is reversing the district court's treatment of Ms. Deimer's motion to reconsider the grant of partial summary judgment.

The majority holds that the district court misapprehended the procedural context of Ms. Deimer's motion for reconsideration. I note that the majority specifically concludes based on a strained reading of Rule 54(a) and *Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.,* 721 F.2d 197, 200 (7th Cir.1983) that Ms. Deimer's motion should not have been treated as a Rule 59(e) motion. Nevertheless, the majority does not provide us with a definitive procedural context for the motion. That omission is immaterial, however, as I do not believe that the district court's apprehension of the procedural context is relevant. No matter what the procedural context, the district court could not consider the affidavit.

A multitude of cases stands for the proposition that a party cannot avoid summary judgment by submitting an affidavit that conflicts with earlier deposition testimony. *See, e.g., Adelman–Tremblay v. Jewel Companies, Inc.,* 859 F.2d 517, 520 (7th Cir.1988); *Diliberti v. United States,* 817 F.2d 1259, 1263 (7th Cir.1987); *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 861 (7th Cir.1985); *Miller v. A.H. Robins Co.,* 766 F.2d 1102, 1104 (7th Cir.1985). These cases, which involved affidavits attached to motions in opposition to summary judgment, apply even more strongly in this context because Ms. Deimer filed the affidavit after the judge had already granted partial summary judgment. The purpose of summary judgment motions is "to weed out unfounded claims, specious denials, and sham defenses." *Babrocky,* 773 F.2d at 861. To allow a party to create a genuine issue of material fact by contradicting or endeavoring to provide a strained interpretation of a deposition by means of an affidavit would destroy these purposes and eviscerate the summary judgment rule, leaving district courts with caseloads even more burdensome than they already are. I

believe that the majority's treatment of this case allows for just such a possibility.

Finally, this is not a case where one of the few exceptions to the rule against the use of affidavits to contradict deposition testimony applies. A subsequent affidavit may be allowed to clarify ambiguous or confusing deposition testimony. *Adelman–Tremblay*, 859 F.2d at 520. A subsequent affidavit is also permissible if it is based on newly discovered evidence. *Id.* Ms. Deimer does not assert that she based her affidavit on newly discovered evidence. However, her affidavit is apparently based on the proposition that the following deposition testimony was confusing or ambiguous:

> Q. Have you ever searched any [Blank-etrol] machines for any type of device to secure the cord?
>
> A. There was never a place to put the cord in.
>
> Q. My question is did you ever search the machine for any type of device to secure the cord?
>
> A. Did I ever search for it personally?
>
> Q. Yeah.
>
> A. No.

(R. 40, Ex. B at 73). I do not believe that this testimony is either ambiguous or confusing. Her answer regarding the cord wrap device was not equivocal, it was not itself ambiguous, nor was it a response to an ambiguous question. Therefore, she is not entitled to explain this testimony through the use of an affidavit. Thus, I would affirm the district court in all respects.