NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 9, 2009
Decided January 25, 2010

*Before*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 09-1362

| | |
|---|---|
| ARTHUR W. FUESTING, | Appeal from the United States |
| *Plaintiff-Appellant*, | District Court for the Central |
| | District of Illinois. |
| *v.* | |
| | No. 2:02-CV-2251 |
| ZIMMER, INC., | |
| *Defendant-Appellee*. | Michael P. McCuskey, |
| | *Chief Judge*. |

## O R D E R

Arthur W. Fuesting alleges that Zimmer, Inc.'s knee implant was improperly sterilized and as a result malfunctioned, causing him pain and suffering. In our earlier opinion we excluded the testimony of Dr. James Pugh, Fuesting's initial causation expert. On remand, Fuesting employed the services of Dr. Robert Rose, who testified that the knee implant oxidized while it was implanted because Zimmer used a faulty sterilization process. Dr. Rose's testimony suffers from the same deficiencies upon which we excluded Dr. Pugh's

testimony in the earlier opinion — most importantly, it fails to link his general theories about implant oxidation to Fuesting's knee implant in particular. Although Dr. Rose theorizes that Fuesting's knee implant failed due to oxidation that occurred while it was implanted, he fails to articulate how his conclusions about knee implants in general pertain to Fuesting's knee implant in particular. The record indicates that this oxidation could have occurred in the six years after it was explanted but before Dr. Rose examined it. He also fails to show that better sterilization methods existed at the time Fuesting's knee was implanted. In fact, the record reveals that the method used by Zimmer was the industry standard. The district court did not err in excluding Dr. Rose's testimony or that of Dr. James McKechnie, who based his conclusions on Dr. Rose's theories. And without his experts, Fuesting cannot prove causation, so the district court properly granted summary judgment in Zimmer's favor.

## I. BACKGROUND

A full factual background for this case can be found in our earlier opinion, *Fuesting v. Zimmer, Inc.*, 421 F.3d 528 (7th Cir. 2005) ("*Fuesting I*"), so we need recount only those facts directly relevant to this appeal. Zimmer, Inc. manufactures orthopedic implants. In 1992, Arthur W. Fuesting had his right knee replaced with Zimmer's I/B Knee implant. By May 2001, Fuesting was experiencing swelling in his right knee. Before its implantation, Zimmer sterilized the knee implant using a technique called gamma irradiation in air ("GIA").

In October 2002, Fuesting filed suit against Zimmer on a theory of design defect, claiming negligence and strict liability based on Zimmer's decision to sterilize his right knee implant using GIA instead of another method. Fuesting proffered Dr. James Pugh as an expert witness in support of his claims. Dr. Pugh opined that the design of the implant was defective because it delaminated and therefore failed due to oxidation caused by the GIA sterilization process, and manufacturers such as Zimmer should have known in 1991 that better sterilization processes were available (such as gamma irradiation in an inert environment or sterilization with ethylene oxide). The district court denied Zimmer's pre-trial motion to exclude Dr. Pugh's testimony as unreliable under Federal Rule of Evidence 702. The case went to trial, and a jury found in favor of Fuesting, awarding him $650,000 in damages.

Zimmer appealed, and we reversed in *Fuesting I*, finding that the district court erred by failing to exclude Dr. Pugh's testimony as unreliable. Specifically, we found that Dr. Pugh failed to: (1) "bridge the analytical gap" between his opinion that GIA sterilization leads to oxidation and the failure of Fuesting's knee implant in particular; (2) show that his methods were subject to peer review and approval; (3) rule out alternative possibilities for causation; and (4) show that better sterilization methods were available in 1991. We instructed the trial court to enter judgment for Zimmer, but before it could do so, the Supreme Court issued its

decision in *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006), which suggested that it was inappropriate for a court of appeals to award judgment in the absence of a properly-filed postjudgment motion for judgment as matter of law in the district court. Therefore, we amended the original opinion and remanded the case to the district court for further proceedings. *Fuesting v. Zimmer, Inc.*, 448 F.3d 936 (7th Cir. 2006).

On remand, Fuesting hired a new expert, Dr. Robert Rose, who submitted a paltry five-page expert report primarily filled with background facts. Dr. Rose's report stated that upon examination, he found a tell-tale "white band" indicating that Fuesting's knee implant failed because of oxidation that occurred while the implant was "in vivo" (implanted in Fuesting). The district court excluded Dr. Rose's testimony, and also excluded the testimony of Fuesting's treating physician, Dr. McKechnie, because he relied on the opinion of Dr. Rose in forming his conclusions. Since the district court excluded all of Fuesting's causation testimony, it granted Zimmer's summary judgment motion. Fuesting now appeals.

## II.   ANALYSIS

### A.  Exclusion of Expert Testimony from Dr. Rose and Dr. McKechnie

In both strict liability and negligence actions regarding design, Illinois law (under which Fuesting's claims proceed) requires plaintiffs to establish "the existence of a defective condition in the product at the time it left the manufacturer's control," *Carrizales v. Rheem Mfg. Co.*, 589 N.E.2d 569, 580 (Ill. 1991), and "a causal link between the alleged design defect . . . and [the plaintiff's] injury," *Baltus v. Weaver Div. of Kidde & Co.*, 557 N.E.2d 580, 586 (Ill. 1990). Toward both these ends, Fuesting proffered the expert testimony of Drs. Rose and McKechnie. Without expert causation testimony, Fuesting's claims fail. *Fuesting I*, 421 F.3d at 537-38.

The admissibility of scientific expert testimony is governed by Federal Rule of Evidence 702, and in particular *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of

the case.

Rule 702 requires the district court to perform a "gate-keeping" function before admitting expert scientific testimony in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Before considering whether the testimony "will assist the trier of fact to understand or determine a fact in issue," a district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Id*. at 592-93. To aid courts in assessing the reliability of scientific expert testimony, the Supreme Court set forth the following, non-exhaustive list of "guideposts" for consideration: (1) whether the scientific theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error when applied; and (4) whether the theory has been "generally accepted" in the scientific community. *Id*. at 593-94; *see also Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). We review de novo whether the court correctly applied *Daubert*'s framework, and we review the court's decision to admit or exclude expert testimony for abuse of discretion. *Kunz v. DeFelice*, 538 F.3d 667, 675 (7th Cir. 2008).

In this case, Dr. Rose's testimony fails for essentially the same reasons that Dr. Pugh's did. First, Dr. Rose's testimony did not show that his theory that these knee implants oxidize "in vivo" has sufficient acceptance in the scientific community. He cited several articles that he wrote, the most recent one in 1986, but the bulk of these articles concern the oxidizing of an implant prior to implantation. He failed to point to any peer reviewed studies that discuss the oxidation rates of this type of implant in vivo. In this case, the implant sat on a shelf for seven months before implantation, was in vivo for nine years, and then sat on a shelf again for six additional years before Dr. Rose examined it. Dr. Rose failed to cite any articles or studies that he or any one else conducted regarding how one can discern whether the oxidation occurred before or after implantation. And in this case, it is perfectly plausible that the oxidation occurred after it was removed. Dr. Rose also did not rule out possible alternative methods of causation. Zimmer, as well as the implant industry as a whole, admits that GIA causes at least some oxidization. However, Dr. Rose failed to proffer any evidence that GIA caused this oxidation to occur at a rapid rate while the implant was in Fuesting. Nor did he articulate why this oxidation could not have occurred during the six years after it was explanted and before he examined it, rather than while it was in vivo. He also did not discuss other possible reasons for the device's failure, such as Fuesting's weight or gait. Nor does he explain how the device's oxidation caused the device to fail — the mere presence of oxidation does not prove that the oxidation caused the device to malfunction.

More importantly, like Dr. Pugh, Dr. Rose has failed to "bridge the analytical gap"

between the accepted fact that GIA sterilization causes at least some amount of oxidation and his ultimate conclusion that Fuesting's knee implant in particular failed because GIA, rather than another sterilization method, was used.  One indicator of unreliability is the unjustifiable extrapolation from an accepted premise to an unfounded conclusion.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").  Dr. Rose did not answer a variety of questions posed by this court in its earlier opinion with any specificity.  Among other things, he failed to address "with respect to Fuesting's implant in particular, what quantum of each variable is required to set this agreed upon chain reaction in motion. How much radiation does it take to cause oxidation, and to what degree? How much oxidation must occur to render polyethylene more susceptible to delamination? . . . .".  *Fuesting I*, 421 F.3d at 536.  As we noted, "some greater methodology is required to bridge the analytical gap between general principles and particular conclusions, and to vest thereby the opinion with requisite reliability."  *Id*.  Here, Dr. Rose did not employ any "greater methodology" that linked his general observations with Fuesting's knee implant in particular.

Last, Dr. Rose failed to show that better sterilization alternatives existed in 1991.  He concluded, in one sentence and without any support, that the industry standard was to sterilize implants in an inert gas instead of air.  However, as we held in our prior opinion, "[the] testimony that Zimmer should have sterilized the subject implant through gamma irradiation in an inert environment is wholly unfounded. The record reveals that, at the time of the subject I/B Knee implant's manufacture (1991), it was virtually universal industry practice to sterilize such implants by gamma irradiation in air. Indeed, no manufacturer at that time employed any of [the] proffered methods, and [Dr. Rose] has cited no contemporary articles counseling the use of such methods."  *Id*. at 537; *see also McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 657-58 (7th Cir. 1998) (holding that a "bare conclusion" offered without explanation or empirical support fails the reliability requirement of Rule 702).  To the contrary, "the record suggests that the I/B Knee at issue is one of the most successful knee implants ever studied, has the longest and highest survivorship rate published for any knee prosthesis, and has even been called the "gold standard" of its kind."  *Fuesting I*, 421 F.3d at 537.  For all these reasons, the district court did not abuse its discretion in excluding Dr. Rose's testimony.

Likewise, as we found before, because Dr. McKechnie's testimony on causation primarily relies on an excluded expert opinion (in this case, Dr. Rose's), the district court did not err in excluding it.  *See Fuesting I*, 421 at 537.  Given that all causation testimony has been excluded, Fuesting's strict liability and negligence claims necessarily fail, and summary judgment in favor of Zimmer is appropriate.  *Id*.

## B.  Alleged Discovery Violation

Fuesting argues that before this court's ruling in *Fuesting I*, Zimmer failed to disclose certain documents, though it is not clear what these documents are.  He argues that had Zimmer disclosed them, this court would not have excluded Dr. Pugh's testimony.  As a result of this alleged discovery violation, Fuesting moved for sanctions – he asked the district court to award summary judgment in his favor – which the district court denied. As the district court noted in its opinion, which we review for abuse of discretion, Fuesting's motion to compel the production of these documents was originally denied as untimely. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1067 (7th Cir. 2003).  Moreover, given the variety of reasons for excluding this expert testimony in *Fuesting I*, Fuesting's argument that these documents would have changed the court's decision is unpersuasive.  So, the district court did not err in denying the requested sanctions.

### III.  CONCLUSION

For the foregoing reasons, the district court's exclusion of the testimony of Drs. Rose and McKechnie, denial of Fuesting's request for sanctions, and award of summary judgment in favor of Zimmer, are all **AFFIRMED**.