Filed 10/22/09       NO. 4-09-0057

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

KEITH HENRY and SUE HENRY,            )   Appeal from
          Plaintiffs-Appellants,      )   Circuit Court of
          v.                          )   Clark County
PANASONIC FACTORY AUTOMATION COMPANY, )   No. 04L12
          Defendant-Appellee,         )
          and                         )
PANASONIC FACTORY AUTOMATION COMPANY, )
          Third-Party Plaintiff-      )
          Appellee,                   )
          v.                          )   Honorable
TRW AUTOMOTIVE U.S., LLC,             )   Tracy W. Resch,
          Third-Party Defendant.      )   Judge Presiding.
_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

In June 2004, plaintiffs, Keith and Sue Henry, filed a two-count complaint against defendant, Panasonic Factory Automation Company (Panasonic), alleging Keith was injured at work while using equipment designed and manufactured by Panasonic that was unreasonably dangerous.  Plaintiffs appeal from the trial court's December 2008 decision to grant Panasonic's motion for summary judgment.  We affirm.

I. BACKGROUND

On June 30, 2004, plaintiffs filed a two-count complaint against Panasonic.  In count I, Keith alleged Panasonic was engaged in business as a manufacturer of production machinery and equipment, including an MSH Model #1 (MSH), which it sold under the trade name of "Serial #2576, 10 head machine, medium

size."  Sometime prior to July 4, 2002, Panasonic sold and delivered an MSH to third-party defendant, TRW Automotive U.S., LLC (TRW).  On July 4, 2002, Keith was employed by TRW.  Keith's job duties required him to use or operate the MSH.  According to the complaint, the machine was unreasonably dangerous from the time it left Panasonic's possession to and including the date of the occurrence, in that (1) it did not have a proper safety guard, (2) the safety gate did not prevent the machine from operating, and (3) it did not have a safety device to prevent injury to the operator.  As a direct result of one or more of the foregoing unreasonably dangerous conditions, Keith's leg and knee were severely injured when he was struck in the leg while operating the machine.  Keith alleged he has (1) suffered and will continue to suffer for the remainder of his life, (2) spent and will be required to further spend large sums of money for medical and hospital care because of his injuries, and (3) been prevented from working and will be deprived of income he otherwise would have earned.

In count II, Sue repeated the allegations Keith made in count I and additionally alleged she has suffered loss of consortium with her husband.

On June 30, 2006, Panasonic filed a two-count third-party complaint against TRW, alleging (1) negligence and (2) spoliation of evidence.

On May 31, 2007, Keith filed his supplemental answers to interrogatories. Pursuant to Panasonic's request for disclosure of the names and addresses of all witnesses expected to offer testimony at the time of trial pursuant to Supreme Court Rules 213(f)(1), (f)(2), and (f)(3) (210 Ill. 2d Rs. 213(f)(1), (f)(2), (f)(3)), Keith identified Dr. Charles Roberts as his expert who would testify that the machine was unsafe. Keith does not allege any of his other witnesses were experts.

On August 8, 2008, Panasonic filed a motion for summary judgment in which it alleged Dr. Roberts identified one alleged defect with the machine. Specifically, the motion alleged Dr. Roberts opined that the design of the machine was dangerous because it required the operator to remain inside the machine to determine if adjustments to the cutter bar were effective. Because the uncontested facts showed that an operator need not be inside the machine to determine if the cutter bar had been adjusted correctly, Panasonic contended it was entitled to summary judgment. In support of its motion for summary judgment, Panasonic filed a statement of uncontested material facts, which was adopted (with one exception discussed below) by plaintiffs. The following facts that relate to the accident that resulted in Keith's injury are taken from the statement of uncontested material facts.

On July 4, 2002, Keith was injured while observing and

adjusting the cutter blade on the MSH, a high-speed placement machine, at TRW's plant in Marshall, Illinois. Panasonic sold the MSH to TRW.

At the time of the accident, Keith and Julie Price, a fellow TRW employee, were operating the MSH. Keith "started to work on the cutter, cut the power to the MSH, turned off the servo motors to the MSH, walked to the rear of the MSH, lowered the safety gate, entered the MSH, and began to adjust the cutter bar." Price turned on the MSH, and the Z carriage activated and struck Keith. Price then hit the emergency stop button to de-energize the MSH. According to the statement of uncontested facts, "[w]hile inside the MSH, [Keith] asked Price (who was standing in front of the MSH) to turn the power on to the machine so he could see if the cutter was working properly." (Plaintiffs objected to this statement and maintained Keith "did not request power to the machine, only power to the cutter".)

Keith had been trained not to energize the MSH while he, or any other operator, was inside the machine. A TRW operator engages in a dangerous practice if he or she energizes the MSH while in the area of the Z carriage.

An individual can properly check the function of the cutter from outside the MSH. Keith had been trained to view the cutter from outside the MSH after adjusting it to see if it was operating correctly. Keith would not have been injured had he

observed the cutter from outside the MSH.

Plaintiffs retained Dr. Charles Roberts as their expert witness to offer testimony concerning the alleged design defect of the MSH. "Dr. Roberts opined that the design of the MSH was inherently dangerous because the adjustment of its cutter 'invites' the operator into the machine to observe the cutter bar." Specifically, Dr. Roberts stated the following during his deposition: "Well, what I did is I told him that I, it was my opinion that the inherent adjustment of the cutter in this machine tended to invite the operator into a very hazardous location and required him to work on it and to make sure it was working probably in the machine, which in my opinion, is a hazardous operation." Dr. Roberts opined that the MSH was also inherently dangerous because an operator was required to remain in the area of the Z carriage of the MSH while it was running in order to observe the cutter. This is dangerous because it could cause the operator to be struck by the Z carriage. These were the only opinions Dr. Roberts offered as to the inherent danger of the MSH's design.

Dr. Roberts acknowledged that the MSH would not be inherently dangerous if the operator could observe the cutter bar while standing outside the machine. Specifically, when asked if it would change his opinion of whether the design of the machine was unsafe if it were "possible to adjust the cutter, step outside the machine, turn the machine on, and watch it or listen

to it to see if it was operating correctly," Dr. Roberts responded that "[i]f it were possible to do that, I would say the machine would not be unsafe." An MSH operator can observe the cutter bar after performing the adjustments on it while standing outside the machine.

Dr. Roberts also acknowledged that the MSH would not be inherently dangerous if an operator could determine the cutter bar was working correctly by listening to the machine while standing outside of it. An MSH operator can stand outside the machine and listen to the machine to determine if the adjustment of the cutter bar was effective.

Dr. Roberts did not find anything wrong with the MSH's safety gate or guard. Dr. Roberts did not offer, and was not prepared to offer, an opinion on whether (1) the MSH had a proper safety guard, (2) the safety gate prevented the machine from operating, or (3) the MSH had a safety device to prevent injury to the operator.

In addition to the facts set forth above from the statement of uncontested material facts, plaintiffs maintain certain deposition testimony is relevant to the issues. However, none of these witnesses are experts, and their testimony is therefore irrelevant to the issue presented by the trial court's decision to grant summary judgment.

On December 2, 2008, the trial court held a hearing on

Panasonic's motion for summary judgment. On December 30, 2008, the trial court granted Panasonic's motion for summary judgment. In so concluding, the court, citing Baltus v. Weaver Division of Kidde & Co., 199 Ill. App. 3d 821, 557 N.E.2d 580 (1990), stated "[o]pinion testimony of a qualified expert is necessary in the circumstances of this case to prove manufacturing negligence resulting in an unreasonably dangerous condition." The court stated that plaintiffs identified Dr. Roberts as a person qualified to render an expert opinion. The court noted that in his deposition, Dr. Roberts "identified one alleged defect in the MSH machine. He testified that the MSH is inherently dangerous because the design of the machine requires (or invites) the operator to remain inside the machine to determine if adjustments made to the cutter blade or bar were effective." However, the court noted that Dr. Roberts' opinion was based upon the incorrect assumption that it was necessary for Keith to be inside the MSH to determine if the cutter bar was properly adjusted. Moreover, Dr. Roberts stated that if that assumption was incorrect, his opinion would change and he would opine that the machine was not unsafe. The court concluded plaintiffs' other witnesses were not experts and their opinions were personal opinions not based on any technical or scientific knowledge of manufacturing design. Further, plaintiffs did not submit evidence of any other defective condition that existed at the time

the MSH left Panasonic's control. "In sum, there is no opinion testimony by a qualified expert that a defective design of the MSH machine caused it to be inherently dangerous and caused the bodily injury."

This appeal followed.

## II. ANALYSIS

Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004). "While summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and thus should be allowed only when the right of the moving party is clear and free from doubt." Ford v. Round Barn True Value, Inc., 377 Ill. App. 3d 1109, 1116, 883 N.E.2d 20, 26 (2007). Summary judgment for the defendant is proper if the plaintiff fails to establish any element of the cause of action. Williams v. Manchester, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008). We review the trial court's ruling on a motion for summary judgment de novo. Williams, 228 Ill. 2d at 417, 888 N.E.2d at 9.

To recover damages from a manufacturer under a product-liability theory, a plaintiff "must prove his injury resulted from an unreasonably dangerous condition of the product that

existed at the time the product left the manufacturer's control." Rotzoll v. Overhead Door Corp., 289 Ill. App. 3d 410, 413, 681 N.E.2d 156, 158 (1997). Here, the trial court granted Panasonic-'s motion for summary judgment because plaintiffs had no opinion evidence from a qualified expert that a defective design caused the MSH to be unreasonably dangerous.

"In a negligent defective[-]design case, the focus is on the conduct of the defendant, but in a strict[-]liability defective[-]design case, the focus is on the product." Blue v. Environmental Engineering, Inc., 215 Ill. 2d 78, 95, 828 N.E.2d 1128, 1141 (2005). "[T]he threshold question of unreasonably dangerous design is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function." Baltus, 199 Ill. App. 3d at 830, 557 N.E.2d at 586. In Illinois, a party who "'sells any product in a defective condition unreasonably dangerous to the user or con-sumer'" is subject to strict liability. Lamkin v. Towner, 138 Ill. 2d 510, 528, 563 N.E.2d 449, 457 (1990), quoting Restatement (Second) of Torts §402A, at 347-48 (1965). "A product may be found to be unreasonably dangerous based on proof of any one of three conditions: a physical defect in the product itself, a defect in the product's design, or a failure of the manufacturer to warn of the danger or to instruct on the proper use of the

product."  Mikolajczyk v. Ford Motor Co., 231 Ill. 2d 516, 525, 901 N.E.2d 329, 335 (2008).  Here, plaintiffs alleged a defect in the MSH's design.

As stated, the trial court, relying on Baltus, granted summary judgment in favor of Panasonic because there was no opinion testimony by a qualified expert that a defective design caused the MSH machine to be inherently dangerous and caused bodily injury.  "Products[-]liability actions *** often involve specialized knowledge or expertise outside the layman's knowledge.  Manufacturing negligence resulting in an unreasonably dangerous product seems particularly appropriate for expert opinion."  Baltus, 199 Ill. App. 3d at 834, 557 N.E.2d at 588-89.  The Baltus court analogized product-liability cases to those involving medical malpractice.  Baltus, 199 Ill. App. 3d at 835-36, 557 N.E.2d at 589.

> "Both types of cases involve specialized
> knowledge that bear directly on the standard
> of care in the community.  While some in-
> stances of medical malpractice need no expert
> opinion that a doctor has fallen below the
> standard of care (such as a case in which an
> instrument is left in the patient after sur-
> gery), expert opinion usually is required to
> aid the jury in determining that the perti-

nent standard of care has been breached."

Baltus, 199 Ill. App. 3d at 836, 557 N.E.2d

at 589.

The court went on to state that not all cases of negligent manufacture or design require expert opinion as to whether a product is unreasonably dangerous. Baltus, 199 Ill. App. 3d at 836, 577 N.E.2d at 589.

In the instant case, the MSH is a specialized piece of equipment, and the design and manufacture of the MSH involves specialized knowledge. Therefore, we conclude plaintiffs cannot establish a breach of the standard of care in this case without expert testimony. Notably, in their brief, plaintiffs do not dispute the assertion that expert testimony was needed to survive summary judgment. Instead, plaintiffs maintain that Dr. Roberts' expert testimony established a prima facie case that the MSH was unreasonably dangerous.

In the case sub judice, plaintiffs' complaint alleged the MSH was unreasonably dangerous because of defects in its design. Specifically, paragraph 4 of the complaint alleged that the MSH was unreasonably dangerous because (1) it did not have a proper safety guard, (2) the safety gate did not prevent the machine from operating, and (3) the machine did not have a safety device to prevent injury to the operator. During Dr. Roberts' deposition, Panasonic's attorney asked Dr. Roberts to look at

paragraph 4 of the complaint.  The following exchange took place:

"Q. I want you to look at [p]aragraph 4A.  Do you see that?  It did not have a proper safety guard.

A. That's correct.

Q. Do you have any opinion about whether or not the MSH machine had a proper safety guard?

A. I had not offered an opinion on that.

Q. And you are not prepared to today?

A. Not at the time, no.

Q. Well, you said not at the time.  You mean--

A. I mean, not at this time.

Q. Look at [s]ubparagraph B, the safety gate did not prevent the machine from operating.  I take it you have no opinion in that regard as well?

A. That's right.

Q. And the machine did not have a safety device to prevent injury to the operator.  I take it you have no opinion in that regard either?

A. That's correct."

Therefore, plaintiffs' expert had no opinion regarding any of the three specific allegations of design defect contained in plaintiffs' complaint. Instead of these three allegations, plaintiffs' brief focuses on Dr. Roberts' testimony that the MSH was unreasonably dangerous because the design invited or required the operator to remain inside the machine to determine whether the adjustments made to the cutter bar were effective. However, according to Panasonic's statement of uncontested material facts, which plaintiffs adopted, Dr. Roberts admitted that the MSH would not be inherently dangerous if an operator could observe the cutter bar while standing outside the machine. Dr. Roberts also admitted the MSH would not be inherently dangerous if an operator could determine the cutter bar was working correctly by listening to the machine while standing outside of it. The parties agree that an MSH operator can both (1) observe the cutter bar and (2) listen to the machine--while standing outside the machine--to determine if the adjustments on the cutter bar were effective. In light of Dr. Roberts' testimony, plaintiffs do not have an expert opinion that supports any of their three specific allegations of design defect in the complaint or the assertion that the MSH is unreasonably dangerous because it invites or requires an operator to be inside the machine while checking to see if the adjustments made to the cutter bar were effective. Therefore, plaintiffs have failed to set forth any evidence that the MSH was

unreasonably dangerous and, pursuant to Baltus, the trial court properly granted summary judgment in favor of Panasonic.

Plaintiffs attempt to distinguish Baltus on the ground that the plaintiff in Baltus failed to disclose an expert witness while, here, plaintiffs had an expert witness who testified the product was unreasonably dangerous. In Baltus, the plaintiff's expert was barred from testifying because the plaintiff failed to disclose any expert witnesses. Baltus, 199 Ill. App. 3d at 825, 557 N.E.2d at 582. The plaintiff was barred from testifying as an expert even though he had 20 years' experience working with the allegedly defective product. Baltus, 199 Ill. App. 3d at 837, 557 N.E.2d at 590. The court granted the defendant's motion for summary judgment because expert testimony was needed to establish a breach of the standard of care and the plaintiff had no such testimony. Baltus, 199 Ill. App. 3d at 837, 557 N.E.2d at 590.

No such expert testimony exists in the case sub judice either. As stated, Dr. Roberts acknowledged the design was not unreasonably dangerous where the operator could check the effectiveness of the adjustments to the cutter bar from outside the machine. Therefore, plaintiffs have no evidence supporting an element of their claim, i.e., that the design was unreasonably dangerous. We fail to see an important distinction between situations where the expert testimony is not allowed because of a

- 14 -

failure to disclose the expert, thus leaving the plaintiff with no expert testimony establishing a breach of the standard of care, and a case such as the case sub judice where the expert acknowledges the design was not unsafe, similarly leaving plaintiffs with no expert testimony establishing a breach of the standard of care.

Plaintiffs' brief references testimony from several co-workers regarding how they were trained, their opinions on whether the MSH was hazardous, and how other employees had often performed the same procedure on the cutter in the same manner that Keith did when he got injured.  However, as the trial court stated, none of these witnesses showed they possess sufficient scientific or technical knowledge to give testimony on the issue of defective design.  As the Baltus court, and the cases cited therein, noted, expertise from many years of using a machine "does not mean [one] has the knowledge, skills, and experience as a manufacturer or designer of the equipment."  Baltus, 199 Ill. App. 3d at 837, 557 N.E.2d at 590-91.

In sum, under the facts of this case, plaintiffs were required to set forth opinion testimony by a qualified expert that the MSH was defectively designed, causing it to be unreasonably dangerous, and caused Keith's bodily injury.  Plaintiffs have failed to set forth expert opinion testimony that the MSH's design was unreasonably dangerous.  Therefore, the trial court

properly granted Panasonic's motion for summary judgment.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MCCULLOUGH, P.J., and STEIGMANN, J., concur.