SECOND DIVISION
June 30, 2010

No. 1-09-1402

| | | |
|---|---|---|
| CHARLES J. SALERNO, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| INNOVATIVE SURVEILLANCE TECHNOLOGY, | ) | |
| INC., a Florida Corporation, | ) | No. 05 L 10967 |
| | ) | |
| Defendant and Third-Party Plaintiff-Appellee | ) | |
| | ) | |
| (All Star Machine, Inc., | ) | Honorable |
| | ) | Thomas P. Quinn, |
| Third-Party Defendant). | ) | Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

This case arises out of injuries sustained by plaintiff Charles J. Salerno after he struck his head on a periscope mounted on the ceiling of a surveillance van procured by his employer from defendant Innovative Surveillance Technology (IST). Plaintiff sued IST asserting, *inter alia*, claims of strict products liability and negligence. On IST's motion, the trial court found that the periscope was an open and obvious danger and granted summary judgment in IST's favor. Plaintiff argues on appeal that the "distraction" and "deliberate encounter" exceptions preclude such a finding. He further argues that summary judgment was inappropriate on other grounds raised by IST because questions of material fact exist. For the following reasons, we affirm the

circuit court's judgment and order.

Plaintiff worked as an investigator in what is now known as the narcotics technical field operations unit of the Cook County State's Attorney's office. The unit was responsible for gathering evidence from undercover drug transactions. The State's Attorney's office purchased the IST-6000 surveillance van from IST to assist in that function. The van's cargo area contained most of the surveillance equipment, including video cameras, television monitors, a VCR, radio receivers, and audio recorders. The equipment was oriented around a "command chair" from which a single operator could control all of the devices. The capacity of the cargo area was approximately 275 cubic feet and the distance from the floor to the ceiling measured approximately 48 to 50 inches.

The van also contained a video periscope system beside the command chair, which was comprised of three parts. The periscope itself was bolted to the ceiling and was secured with a steel plate. It descended into the cargo area approximately 12 inches from the ceiling. The periscope could rotate 360 degrees in either direction. The operator could turn to use the periscope while seated in the command chair, but would not otherwise make contact with the periscope in that location. The periscope system also had a video camera and zoom lenses that protruded upward from the ceiling through the roof of the van to permit outside observation.

In October of 2003, plaintiff was injured when he attempted to stand up inside the cargo area and struck his head on the unpadded metal portion of the periscope. He suffered severe head trauma and seizures as a result of his injury. He then filed suit against IST. In count I of his

complaint, plaintiff alleged a "strict liability" claim in which he asserted that the IST-6000 was unreasonably dangerous and defective. Specifically, he alleged the following:

"a. Failure to include sufficient and adequate instructions and warnings;

b. Inadequate design of unpadded and exposed metal surveillance periscope for purposes of protecting passengers from head injury or other injury;

c. An inherently defective design that would result in an unreasonably high propensity to cause head injury or other injury in the course of foreseeable use; [and]

d. Failure to provide adequate warning to consumers or users of the dangers or hazards inherent in the use of the IST-6000."

In count II, plaintiff alleged a "negligence" claim. He asserted that IST:

"a. Negligently and carelessly designed the IST-6000 such that there was an unpadded and exposed metal surveillance periscope which protruded into the area of the van where users of the IST-6000 equipment were intended to be while the van was in use, including during times of travel, such that there was an unreasonably high propensity to cause head injury or other injury in the course of foreseeable use;

b. Negligently and carelessly failed to adequately and sufficiently warn and instruct [plaintiff] of the nature and type of the aforesaid dangerous condition; [and]

       c. Otherwise carelessly and negligently and carelessly [*sic*] designed the IST-6000."

Plaintiff also asserted a claim for breach of express and implied warranties of merchantability.

       During the course of discovery, the parties took relevant deposition testimony from the following witnesses: plaintiff; Kenneth Maicke and Maurice Macklin, both supervisors in the narcotics technical field operations unit who were present at the time of plaintiff's accident; Thomas Calnan, former president of IST; and Donald DiFrisco, current president and chief executive officer of IST's successor company. Plaintiff did not disclose any expert witnesses to testify about the design of the IST-6000 or any other surveillance van.

       Plaintiff testified that on the day of the accident, he was preparing the IST-6000 for use in a surveillance operation. He testified that just before he hit his head, he was squatting down inside of the cargo area of the van moving some equipment. He stated that when he attempted to stand up from the squatting position, he hit his head on what he believed was the exposed metal portion of the periscope.

       Maicke and Macklin were present at the time of plaintiff's accident, although neither of them saw plaintiff's injury. Both Maicke and Macklin testified that they had just finished a conversation with plaintiff and were standing outside of the van facing away from it while plaintiff was inside the van preparing the equipment. Maicke stated that shortly thereafter, he heard a "bang." Macklin testified that he heard a "loud thud that shook the van." Plaintiff then exited the van holding his head and said that he hit his head on the periscope. Maicke stated that

plaintiff had an open wound on his head about one-half inch long. He advised plaintiff to seek medical attention. Maicke learned that plaintiff later went to the hospital after suffering a seizure.

Calnan testified that he was the founder and president of IST in 1999 at the time that the State's Attorney's office acquired the IST-6000 surveillance van that is the subject of this case. Generally, he stated that clients chose the surveillance equipment they wanted and Calnan configured the placement of that equipment inside the van. IST's engineers then installed the devices and Calnan and his employees trained clients to use them. Calnan testified that he designed the interior of all of the IST-6000 vans the same way, in part because there was so little space inside the cargo area in which to fit all of the equipment. Specifically, he always installed the video periscope system in the same place because it provided the optimal view for conducting surveillance. He also testified that IST's competitors in the surveillance van industry installed the equipment in the same place in the cargo area of the van because of limited space and configuration options.

Calnan also testified that he purchased all of the periscopes for the IST-6000 vans from All Star Machines, which designed and manufactured the periscopes. Calnan testified that All Star affixed yellow and black warning tape and foam padding to the base of its periscopes. According to Calnan, although other companies also manufactured periscopes, All Star was the only one that put warning tape and padding on its periscopes. Calnan testified that IST installed the periscopes in the same condition as it received them from All Star and did not modify the

equipment or remove the warning tape or padding.

Calnan also testified that when IST delivered vans to its clients, it provided them with an operation manual and extensive training on the use of the equipment. The operation manual described the video periscope as follows:

> "[I]t does not take up inordinate amounts of interior space. But, and this you will learn from experience, [it] protrudes down from the ceiling of the surveillance platform, especially when you are entering and exiting the vehicle through the side doors. We have installed a wide yellow adhesive stripe all around the base of the unit to minimize head damage (your head, not the scopes), but you must remember to use your own level of precautions."

Calnan also testified that IST conducted a program called "Train the Trainers," in which IST employees trained representatives of their law-enforcement clients to use the van and its equipment. According to Calnan, the representatives would then be responsible for training their own investigators. The representatives operated every piece of equipment under IST's supervision and conducted a mock surveillance exercise during the training, which lasted one to three days. IST then had the representatives make a training video that they could use to train their investigators. Additionally, IST required the representatives to sign a statement attesting that they received all of the equipment they ordered; both IST and the client received a copy of that statement.

DiFrisco testified that he joined the named defendant company, IST (Innovative

Surveillance Technology), in August of 2004. IST ceased operations in September of 2006. DiFrisco then formed International Surveillance Technology in October of 2006 and acquired assets and personnel from the predecessor company. He testified that he responded to document discovery requests related to this case, but he had little direct knowledge of the features or design of the van provided to the State's Attorney's office because he joined IST after the van was delivered. However, DiFrisco testified that, generally, IST would acquire its periscopes from All Star and IST's employees installed them in the surveillance vans. He stated that All Star periscopes came with black and yellow tape around the base, but that only the "new version of the scope has padding," while the "old version does not." He stated that he did not know whether padding was available in 1999 when the State's Attorney's office received its van.

IST then filed a motion for summary judgment, arguing, *inter alia*, that the risk of harm from the periscope was open and obvious; therefore, IST had no duty to protect against it. IST also argued that plaintiff failed to establish a *prima facie* case of negligence because he presented no evidence establishing the standard of care or a breach thereof. Finally, IST argued that the breach of warranty claim was barred by the statute of limitations. Additionally, IST had earlier filed a third-party complaint for contribution against All Star, which remained pending.

The circuit court granted summary judgment in IST's favor on all counts. With respect to plaintiff's strict liability and negligence claims, it found that the risk of harm was open and obvious and that IST owed plaintiff no duty. The court determined that its finding eliminated the need for further analysis. Accordingly, the court then dismissed the contribution claim against

1-09-1402

All Star.[1]  Plaintiff now appeals from the court's order granting summary judgment on the strict liability and negligence counts.

We review the circuit court's order granting summary judgment *de novo*.  Adames v. Sheahan, 233 Ill. 2d 276, 296 (2009).  Our function in undertaking such review is to determine whether the circuit court reached the proper result.  Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 216 Ill. 2d 294, 305 (2005).  We need not defer to the reasons given by the court for its decision or the findings on which its decision is based.  Northern Illinois Emergency Physicians, 216 Ill. 2d at 305.   Rather, we may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the lower court relied upon that basis.  Northern Illinois Emergency Physicians, 216 Ill. 2d at 305.

Summary judgment is appropriate only where all of the evidence, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Adames, 233 Ill. 2d at 295.  Although the plaintiff need not prove his case at the summary judgment stage, he must present sufficient evidence to create a genuine issue of material fact.  Wiedenbeck v. Searle, 385 Ill. App. 3d 289, 292 (2008).  If the plaintiff fails to present sufficient evidence to establish any element of his cause of action, summary judgment is proper.  Bagent v. Blessing Care Corp., 224 Ill. 2d 154, 163 (2007).

---

[1] IST also filed a third-party complaint for contribution against the State's Attorney's office, which was dismissed for lack of jurisdiction.  No appeal was taken from that order.

The supreme court has written extensively, particularly in the past five years, on the proper legal framework under which to analyze products liability cases. See, *e.g.*, Mikolajczyk v. Ford Motor Co., 231 Ill. 2d 516 (2008); Calles v. Scripto-Tokai Corp., 224 Ill. 2d 247 (2007); Blue v. Environmental Engineering, Inc., 215 Ill. 2d 78 (2005). Although the parties cite Blue and Calles for general tort principles, neither they nor the circuit court recognized that the substance of those cases controls here. Instead, plaintiff's argument began with a recitation of strict products liability concepts, but concluded by arguing that at some point, "vehicles cease to be chattels and become premises for the purposes of tort analysis" and, thus, we should apply premises liability concepts here. In response, IST presented a disfavored theory that an open and obvious risk of harm is an absolute defense in products liability cases. Nevertheless, the circuit court agreed with IST and granted summary judgment based on the open and obvious risk of harm.

Rather than address the parties' arguments as presented, we will set out the proper legal framework under which to analyze this case and apply the facts of record to it. An injured plaintiff may allege one of two types of products liability claims: a strict liability claim or a negligence claim. Blue, 215 Ill. 2d at 89. The key distinction between the two types of claims lies in the concept of fault. Calles, 224 Ill. 2d at 270. In a strict liability claim, the focus of the inquiry is on the condition of the product itself. Calles, 224 Ill. 2d at 270. A negligence claim accounts for a defendant's fault as well as the product's condition. Calles, 224 Ill. 2d at 270.

A strict products liability claim may proceed under three different theories of liability: a

9

manufacturing defect, a design defect, or a failure to warn. <u>Mikolajczyk</u>, 231 Ill. 2d at 548. A manufacturing defect occurs when one unit in a product line is defective, whereas a design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous. <u>Blue</u>, 215 Ill. 2d at 89-90. A failure to warn of a product's known danger or instruct on the proper use of the product may also result in strict liability. <u>Sollami v. Eaton</u>, 201 Ill. 2d 1, 7 (2002); see also <u>Mikolajczyk</u>, 231 Ill. 2d at 530.

In order to establish a strict products liability claim under the first two theories, a plaintiff must establish: (1) a condition of the product that results from manufacturing or design; (2) the condition made the product unreasonably dangerous; (3) the condition existed at the time the product left the defendant's control; (4) the plaintiff suffered an injury; and (5) the injury was proximately caused by the condition. <u>Mikolajczyk</u>, 231 Ill. 2d at 543. The key inquiry is whether the allegedly defective condition made the product unreasonably dangerous.

When proceeding under a manufacturing defect theory, we apply the consumer-expectation test to determine whether the product is unreasonably dangerous. <u>Blue</u>, 215 Ill. 2d at 90-91; Restatement (Second) of Torts §402A (1965). That test requires a plaintiff to demonstrate that the product is " ' "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. [Citations.]" ' " <u>Blue</u>, 215 Ill. 2d at 91, quoting <u>Lamkin v. Towner</u>, 138 Ill. 2d 510, 528 (1990); see also <u>Calles</u>, 224 Ill. 2d at 256. The test is an objective one, to be viewed in light of the average, normal, or ordinary expectations of the reasonable person. <u>Calles</u>, 224 Ill.

2d at 254.

Under a design defect theory, we apply the consumer-expectation test as well as the risk-utility test to determine whether the product is unreasonably dangerous. Calles, 224 Ill. 2d at 255; see also Mikolajczyk, 231 Ill. 2d at 538. Under the risk-utility test, the court must determine whether " ' "on balance[,] the benefits of the challenged design outweigh the risk of danger inherent in such designs." ' " Blue, 215 Ill. 2d at 92-93, quoting Hansen v. Baxter Healthcare Corp., 198 Ill. 2d 420, 433 (2002), quoting Lamkin, 138 Ill. 2d at 529.[2] Although the question ultimately is one for the finder of fact, the court weighs numerous factors in deciding, as a threshold matter, whether the case is appropriate to submit to a jury. See Calles, 224 Ill. 2d at 263-66 (setting forth a nonexhaustive list of factors for the court to consider in a risk-utility analysis).

Under a failure to warn theory, a plaintiff must demonstrate that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to

---

[2] Our supreme court adopted section 402A of the Restatement (Second) of Torts in Suvada v. White Motor Co., 32 Ill. 2d 612, 621 (1965), as substantive law in consumer-expectation analyses. Blue, 215 Ill. 2d at 90; see also Mikolajczyk, 231 Ill. 2d at 524. Although the court has cited portions of the more recent Restatement (Third) of Products Liability, section 2, with approval, it has expressly declined to adopt section 2(b) as a statement of substantive law in risk-utility analyses. Mikolajczyk, 231 Ill. 2d at 534-35; Restatement (Third) of Products Liability §2(b) (1998).

which the average consumer would not be aware. Sollami, 201 Ill. 2d at 7. "A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." Sollami, 201 Ill. 2d at 7. However, the supreme court long ago held that there is no duty to warn where the product is not defectively designed or manufactured and where the possibility of injury results from a common propensity of the product that is obvious to the user. Genaust v. Illinois Power Co., 62 Ill. 2d 456, 467 (1976), citing Restatement (Second) of Torts §402A, Comment *j*, at 353 (1965) (noting that a product may be prevented from being deemed unreasonably dangerous if it is accompanied by directions or a warning as to its proper use. A product bearing an adequate warning "is not in [a] defective condition, nor is it unreasonably dangerous"). See also Baltus v. Weaver Division of Kidde & Co., 199 Ill. App. 3d 821, 833 (1990).

As even a cursory reading of Blue, Calles and Mikolajczyk makes clear, strict liability jurisprudence is far more complex than we have described here. However, we can dispose of plaintiff's claims in this case without more than the general reference to the theories of liability stated above. First, plaintiff's complaint made no allegation of a manufacturing defect based on unreasonably dangerous conditions in the particular van sold to the State's Attorney's office. See Blue, 215 Ill. 2d at 89-90. Rather, the complaint asserted that IST is liable for the defective design of all units of the IST-6000 because they were unreasonably likely to cause head injuries in the course of foreseeable use. Additionally, plaintiff asserted that IST was liable for failing to

12

provide adequate warnings or instructions as to the van's unreasonably dangerous condition.

Plaintiff has abandoned those claims and, therefore, they are waived. In his reply brief to this court, plaintiff conceded that "there [is] nothing to criticize in [IST's] design [of the IST-6000 van]." Specifically, his argument on appeal was that the periscope "[hung] from the ceiling into the small work area" in the back of the van and it was foreseeable "and foreseen" that "someone would inadvertently strike their [*sic*] head on it." Accordingly, "the periscope was designed to be padded on the bottom to minimize any injury" which might occur; however, this particular periscope was not padded. Thus, plaintiff admitted, "[t]he record came to reflect that the design [of the van] was not the problem" because "[IST] had foreseen the dangers attendant to this unusual specialty vehicle and accounted for them by using a padded periscope." Thus, plaintiff acknowledged that there was no evidence to support his challenge of the van's alleged design defects and he abandoned his pursuit of that claim. See Gallagher v. Lenart, 226 Ill. 2d 208, 229 (2007) (waiver is the "intentional relinquishment of a known right").

By extension, he has also waived his failure to warn claim because if there is "nothing to criticize" in the design of the IST-6000, then there can be no liability premised on IST's failure to warn of an unreasonably dangerous condition caused by a defective design. See Baltus, 199 Ill. App. 3d at 833; Genaust, 62 Ill. 2d at 466-67. Moreover, as stated above, plaintiff effectively admitted in his brief that his criticism was directed at the design of the *periscope*, designed and manufactured by All Star, not the IST-6000 surveillance van. He acknowledged that precisely because the periscope protruded into the cargo area, "it was obvious to the trial court, and would

13

be just as obvious to the jury" that plaintiff could injure himself on it and, therefore, it should have been padded. However, plaintiff's complaint criticized IST's allegedly insufficient warnings of the dangers "inherent in the use of the [van]," for which he later admitted that there is no evidence. Accordingly, summary judgment on the strict liability claim was proper. See Bagent, 224 Ill. 2d at 162-63.

Our holding notwithstanding, we are compelled to address the circuit court's error in disposing of this matter based solely on the van's open and obvious risk of harm. Plaintiff argued that the court's ruling was incorrect because the "distraction" and "deliberate encounter" exceptions to the open and obvious rule applied. However, plaintiff failed to recognize that those exceptions only apply in premises liability cases. Blue, 215 Ill. 2d at 106. The supreme court addressed precisely this argument in Blue and concluded that there was "no basis whatsoever" for applying those exceptions in products liability cases and expressly rejected their application as being "highly problematic" and unwarranted. Blue, 215 Ill. 2d at 107.

Rather, the circuit court erred because our supreme court has expressly rejected the notion that a product's open and obvious risk of harm is an absolute defense to a defective design theory of strict liability. Mikolajczyk, 231 Ill. 2d at 539; Calles, 224 Ill. 2d at 262. Instead, it should be considered as but one factor in a risk-utility analysis. Mikolajczyk, 231 Ill. 2d at 539-40. Ultimately, however, although the court's reasoning was incorrect, summary judgment on plaintiff's strict liability claim was proper because of the lack of evidence in support of that claim. Northern Illinois Emergency Physicians, 216 Ill. 2d at 305.

Summary judgment was also proper on plaintiff's negligence claim. A products liability action based on negligent design falls within the framework of common law negligence. Calles, 224 Ill. 2d at 270. "Thus, a plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damages" resulting therefrom. Calles, 224 Ill. 2d at 270.

"[The] manufacturer has a nondelegable duty to design reasonably safe products." Calles, 224 Ill. 2d at 270. However, this duty does not require the product to reflect the safest design possible or be incapable of causing injury. Baltus, 199 Ill. App. 3d at 829. Rather, the issue is whether the complained-of condition was an unreasonably dangerous defect. Baltus, 199 Ill. App. 3d at 829. Thus, the threshold question is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function. Baltus, 199 Ill. App. 3d at 830.

In order to evaluate the product's dangerousness, the plaintiff must provide some evidence that the manufacturer: (1) deviated from the standard of care that other manufacturers in the industry followed at the time that the product was designed; or (2) knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and that it failed to warn of the product's dangerous propensity. Blue, 215 Ill. 2d at 96, citing Baltus, 199 Ill. App. 3d at 830.[3] Because products liability actions involve specialized knowledge or

---

[3] We are aware that the holding in Blue regarding negligent design claim analysis has been criticized. Calles, 224 Ill. 2d at 269-70. However, that criticism is directed at the

expertise outside of a layman's knowledge, the plaintiff must provide expert testimony on the standard of care and a deviation from that standard to establish either of these propositions. Blue, 215 Ill. 2d at 100; Henry v. Panasonic Factory Automation Co., 396 Ill. App. 3d 321, 326 (2009), quoting Baltus, 199 Ill. App. 3d at 836. It is not enough for a plaintiff to simply say that there was a better way to design the product without such expert testimony. Baltus, 199 Ill. App. 3d at 831.

As above, plaintiff has waived his negligent design defect claim on appeal. Plaintiff's admission that there is "nothing to criticize" in IST's design constitutes a waiver of his negligence claim just as it did with respect to his strict liability claim. See Calles, 224 Ill. 2d at 270 (in strict liability, the focus is on the condition of the product; a negligence claim also accounts for the product's condition as well as defendant's fault). And again, because plaintiff conceded that he had no criticism of the van's design, IST cannot be liable for a negligent failure to warn. See Baltus, 199 Ill. App. 3d at 833; Genaust, 62 Ill. 2d at 467 (where a product is not defectively designed, there is no duty to warn). Therefore, in the absence of any evidence to support his negligence claim, summary judgment was appropriate. See Bagent, 224 Ill. 2d at 163. However, we again note that the circuit court erred in granting summary judgment based on

---

plurality's decision that the risk-utility analysis does not apply in negligence cases. Calles, 224 Ill. 2d at 269-70; Blue, 215 Ill. 2d at 115 (Freeman, J., specially concurring). The remainder of the court's analysis in Blue is viable. But see Jablonski v. Ford Motor Co., 398 Ill. App. 3d 222, 244-46 (2010), appeal allowed, 236 Ill. 2d 555 (2010).

the van's open and obvious risk of harm. <u>Blue</u>, 215 Ill. 2d at 104 (stating that the open and obvious nature of a product's danger in a negligent design defect case is not an absolute bar to liability, but may be considered as part of the duty analysis).

Nevertheless, even if we could address plaintiff's negligence claim, summary judgment would have been proper because plaintiff failed to provide any expert testimony to establish the relevant standard of care or a deviation therefrom that proximately caused his injury. See <u>Blue</u>, 215 Ill. 2d at 100; <u>Henry</u>, 396 Ill. App. 3d at 326. Thus, plaintiff's failure to present evidence on every element of a cause of action would have resulted in summary judgment for IST. <u>Bagent</u>, 224 Ill. 2d at 163.

Finally, in abandoning his design defect claims, plaintiff attempted to argue for the first time in his reply brief that IST was negligent because it "failed to follow its own design" in using "a [periscope] component in which the padding had been left off." It is axiomatic that arguments raised for the first time in a reply brief are waived. 210 Ill. 2d R. 341(h)(7); <u>Burlington Northern & Santa Fe Ry. Co v. ABC-NACO</u>, 389 Ill. App. 3d 691, 717 (2009).

For the foregoing reasons, we affirm the order of the circuit court granting summary judgment for IST.

Affirmed.

CUNNINGHAM, P.J., and HOFFMAN, J., concur.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

CHARLES J. SALERNO,

        Plaintiff-Appellant,

    v.

INNOVATIVE SERVICE TECHNOLOGY, INC.,
a Florida Corporation,

        Defendant and Third-Party Plaintiff-Appellee

(All Star Machine, Inc.,

        Third-Party Defendant).

No. 1-09-1402

**Appellate Court of Illinois**
**First District, Second Division**

**Filed: June 30, 2010**

JUSTICE THEIS delivered the opinion of the court.

Cunningham, P.J., and Hoffman, J., concur.

Appeal from the Circuit Court of Cook County
Honorable Thomas Quinn, Judge Presiding

| For PLAINTIFF-APPELLANT: | Brian T. Nash<br>Robert P. Sheridan, Of Counsel<br>Clifford Law Offices<br>120 N. LaSalle St.<br>31st Floor<br>Chicago, Illinois 60602 | For DEFENDANT And THIRD-PARTY PLAINTIFF-APPELLEE: | Charles P. Rantis<br>Garrett L. Boehm, Jr.<br>Cecilio L. Franco<br>Johnson & Bell, Ltd.<br>33 W. Monroe St.<br>Suite 2700<br>Chicago, IL 60603 |
|---|---|---|---|