2020 IL App (1st) 191861-U
No. 1-19-1861
December 21, 2020

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RASHIDA RAY, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15 CH 18755 |
| | ) | |
| GREGORY CARLSON, | ) | The Honorable |
| | ) | Margaret A. Brennan |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Summary judgment proper when plaintiff failed to provide evidence of a leak in defendant's condominium. The circumstantial evidence provided by plaintiff did not present a factual basis that would arguably entitle plaintiff to a favorable judgment.

¶ 2    Plaintiff Rashida Ray filed a complaint seeking damages against defendant, Gregory Carlson. Ray argued that Carlson's negligence in maintaining his condominium unit caused damage to her unit. Specifically, she alleged Carlson failed to correct a water leak in his unit, failed to allow a prompt inspection, and failed to facilitate repairs. The circuit court granted

summary judgment for Carlson. Ray now appeals, arguing that the circuit court improperly imposed a burden of production on her instead of Carlson, improperly made a finding on a disputed issue of fact, and that she presented a factual basis that would arguably entitle her to a favorable judgment. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4        The subject property is located at 1448 West Arthur Avenue in Chicago, Illinois. The property is part of a condominium building that contains three separate units. Ray owns the bottom unit, a duplex down; it has a main level on the first floor and a second level is below. Carlson owns the unit directly above Ray, and Joel Markovits ("Markovits") owns the unit directly above Carlson.

¶ 5        The Board of Managers of Arthur Arms Condominium Association ("Board") is responsible for the administration, operation, and management of the real property located at 1448-50 W. Arthur Avenue and 6501-07 N. Greenview Avenue. The Arthur Arms Condominium Association ("Association") consists of owners of condominiums located at the Arthur Arms Condominium property. Hales Property Management, Inc. ("Hales") is a Community Association Manager and the agent of the Association.

¶ 6        Ray purchased her unit in 2005 as an investment property. From 2005 until 2014, she experienced issues with sewage backing up in her kitchen sink, which caused the sink to overflow and water to run down into the basement bedroom located directly below the kitchen in Ray's unit. In 2014, Ray discovered that the cause of the sink issue was because Markovits's unit on the third floor had a garbage disposal. Markovits's garbage disposal backed up Ray's

kitchen sink if not allowed to run long enough. Ray also experienced water damage in her basement from an issue with a common element around 2007, which was repaired and has not reoccurred.

¶ 7    On July 25, 2015, Ray visited her unit and discovered extensive water damage. She went to the basement level and noticed the bathroom door closed. Ray tried to open the door, but it was stuck. Ray then noticed the bathroom ceiling "hanging down" blocking the door, a water stain on the granite tile in the bathroom, and water damage on the ceiling outside of the bathroom. Ray then went to the main level of her unit to further investigate. Under the cabinets in the kitchen, Ray noticed water pockets behind the paint and wet walls.  She observed water dripping down the walls above the second level. There was also water damage on the main level to the walls in the kitchen, den, both bathrooms, the master bedroom, and the hallways. Since the water was running down her walls from the ceiling, Ray assumed it started from above her unit. Ray did not notice any water damage when she last visited her unit on July 3, 2015.

¶ 8    Ray notified the Association through its agent, Jacqulin Goodlove of Hales, about the damage. The Board, through Hales, hired a plumber from AMW Building Services ("AMW") who inspected the property on July 27, 2015. The plumber examined Ray's unit but did not get access to inspect Carlson's unit. The plumber ran the water in Ray's unit, flushed the toilet, and pulled down the hanging drywall but was unable to find any active leaks in her unit. Next, the Board hired Axcellent Plumbing to investigate the source of the leak. Axcellent Plumbing also performed an inspection of Carlson's unit but could not find the source of the leak. On

August 6, 2015, another plumber from Bernard Dentzer Plumbing investigated the source of the leak. Bernard also could not find the source of the leak.

¶ 9     On August 26, 2015, Ray hired Goode Plumbing to inspect both Ray's and Carlson's unit. The plumber was unable to identify the source of the leak. However, in its report, the plumber noted the tub surround on Carlson's master bathtub appeared to have new silicone installed and believed it may have been the source of the leak. Further, the report indicated Carlson was "very uncooperative" and would not allow further access to his unit.

¶ 10    On September 21, 2015, Ray hired John Harvey ("Harvey") from Castino Restoration to prepare an estimate for repair of the damages.

¶ 11    On October 28, 2015, Goode Plumbing returned and was able to inspect all three units. However, the plumber was again unable to identify the source of the water leak. In his report, he noticed what appeared to be new silicone around the base of Carlson's master bathtub. Additionally, the plumber found evidence of a prior leak from the washer dryer unit and a grey box in Markovits' unit.

¶ 12    This case originated when the Board filed suit for declaratory and injunctive relief against Ray on December 30, 2015. On February 11, 2016, Ray filed a counterclaim against the Board and a third-party complaint against the Association and Hales. On October 4, 2016, Ray filed the subject Second Amended Third Party Complaint against Carlson and Markovits. Ray's claim against Carlson is the only one remaining in the case.

¶ 13    In the Second Amended Third Party Complaint, Ray alleged Carlson owed her duties to take care of and maintain his unit, repair any leak, prevent damage to Ray's unit, and permit

a prompt inspection of his unit to determine the source of any leak. Ray alleged Carlson breached those duties when a water leak occurred in his unit, he failed to correct it, refused to allow a prompt inspection of his unit, and refused to facilitate repairs or insurance coverage for Ray's losses. Ray also alleged that her unit was damaged by Carlson's negligent handling of the water leak.

¶ 14    On January 24, 2018, this case was referred to mandatory arbitration. On May 31, 2018, Carlson won at arbitration. Ray rejected the arbitration award on June 4, 2018.

¶ 15    During discovery, witnesses provided testimony about their thoughts as to the source of Ray's water damage.

¶ 16    Carlson testified he assumed Ray's water damage was related to the water damage he suffered a few years prior because of its similarity. Carlson later surmised the source of the water damage to Ray's unit could have been a roof drain or something similar. Carlson also assumed that a leak in the third-floor unit was the cause of Ray's damage. Markovits, however, testified he believed the "most logical" explanation was that the closest unit to the water damage would be the source.

¶ 17    Harvey testified he assumed based upon the stains on the ceiling that the water came from above Ray's unit. However, he admitted he did not know whether the water came from Carlson's unit.

¶ 18    On May 23, 2019, Carlson filed a motion for summary judgment arguing that no genuine issue of material fact existed, and he was entitled to judgment as a matter of law. Carlson pointed to the lack of expert testimony and argued Ray failed to meet her burden because she

did not produce evidence demonstrating that he caused the leak. In response, Ray argued the source of the water intrusion causing her damage was a genuine issue of material fact. Ray also argued that Carlson sought to impose the wrong standard, and the question was simply whether an issue of material fact existed, not whether Ray had proven the facts offered in support of her claim.

¶ 19    On August 15, 2019, the circuit court granted Carlson's Motion for Summary Judgment, holding that Ray had "not presented this Court with any admissible evidence that establishes that defendant breach[ed] any duty of care." The circuit court noted that evidence showing there was new caulk in the guest bathroom tub did not "establish[] that the leak came from defendant's unit" and only "call[ed] for speculation." The circuit court concluded Ray "failed to establish a factual basis which would entitle her to judgment."

¶ 20    Ray filed a notice of appeal on September 12, 2019.

¶ 21                                ANALYSIS

¶ 22    On appeal, Ray argues that the circuit court improperly imposed a burden of production on her instead of Carlson, improperly made a finding on a disputed issue of fact, and that she presented a factual basis that would arguably entitle her to a favorable judgment.

¶ 23    Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Henry v. Panasonic Factory Automation Co.*, 396 Ill. App. 3d 321, 327 (2009). As such, summary judgment "is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to

any material fact and the movant is entitled to judgment as a matter of law." *Argueta v. Krivickas*, 2011 IL App (1st) 102166, ¶ 5, quoting *Busch v. Graphic Color Corp.*, 169 Ill. 2d 235, 333 (1996). In determining whether a genuine issue of material fact exists, the evidence in the record must be construed strictly against the parties moving for summary judgment and liberally in favor of the party opposing it. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. Where the material facts are disputed or where the material facts are undisputed, but reasonable persons might draw different inferences from those undisputed facts, summary judgment must be denied. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 24    The party moving for summary judgment bears the initial burden of proof. *Evans v. Brown*, 399 Ill. App. 3d 238, 243 (2010). Only if movant satisfies his initial burden of production does the burden shift to the non-moving party to present some factual basis that would arguably entitle her to a favorable judgment. *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933 (2001). The movant may meet his initial burden of production in two ways: (1) by affirmatively showing that some element of the case must be resolved in movant's favor, or (2) by pointing out to the court that there is an absence of evidence to support the non-moving party's case. Id at 933-934. If the movant supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the non-moving party cannot rest on its pleadings to create a genuine issue of material fact. *Harrison v. Hardin Community Unit School Dist. No. 1*, 197 Ill. 2d 466, 470 (2001).

¶ 25    Although a plaintiff is not required to prove her case at the summary judgment stage, to survive a summary judgment motion as the non-moving party, she must present a factual basis

that would arguably entitle her to a judgment. *Fichtel v. Board of Directors of River Shore of Naperville Condominium Ass'n, Hillcrest Management Co.*, 389 Ill. App. 3d 951, 956 (2009). This includes presenting some evidence to support each element of her cause of action. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. Summary judgment is appropriate if a plaintiff cannot establish an element of her claim. *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335 (2004). Appellate review of a summary judgment ruling is de novo. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12.

¶ 26    To state a cause of action for negligence, the plaintiff must present evidence demonstrating that (1) the defendant owed a duty of care to plaintiff; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injuries. *Guvenoz v. Target Corp.*, 2015 IL App (1st) 133940, ¶ 89.

¶ 27    Ray first argues the circuit court improperly imposed a burden of production on her instead of Carlson. Specifically, Ray maintains the circuit court imposed no burden on Carlson.

¶ 28    In Carlson's motion for summary judgment, he argued Ray failed to produce any evidence that the source of the leak originated from his unit. This argument is supported by the record. At least three different plumbers attempted to identify the source of the leak, and none succeeded. Nonetheless, Ray argues that Carlson merely asserted a lack of evidence when he was instead required to show Ray could not acquire sufficient evidence to prove her claim at trial. See Kleiss, 349 Ill. App. 3d at 350. Ray then argues that expert testimony is unnecessary in the case because it is common sense "that a severe leak causing significant damage that has not recurred must have been repaired." We are unpersuaded by this argument.

¶ 29        Although Ray dismisses expert testimony as unnecessary, she appears to concede that such testimony is in fact unobtainable given the previous unsuccessful investigations and the passage of time. However, without expert testimony or direct evidence, Ray only provides limited circumstantial evidence that, as discussed below, is insufficient to survive a motion for summary judgment. Therefore, Carlson met his initial burden of production for summary judgment.

¶ 30        Next, Ray argues the circuit court improperly made a finding on a disputed issue of fact that should have been left for the trier of fact. Specifically, Ray maintains the trial court improperly weighed the following facts: (1) none of the plumbing reports positively identified the source of the leak, (2) a plumbing report indicated the presence of new caulk around a tub in Carlson's unit, (3) Carlson testified that Gebhardt re-caulked his tubs prior to the leak, and (4) Gebhardt testified that he re-caulked only Carlson's master bathroom tub and not the guest bathroom tub.

¶ 31        Ray attempts to overcome the lack of evidence identifying Carlson's unit as the source of the leak by relying on a plumbing report that merely speculates about a possible leak. However, Ray failed to lay proper foundation for the report. In summary judgment proceedings, a court can only consider evidence that would be admissible at trial, and the basic rules of evidence require a party to lay the proper foundation for the introduction of a document into evidence if it wishes to rely on that document. *Cordeck Sales, Inc. v. Construction Systems, Inc*., 382 Ill. App. 3d 334, 384 (2008). "To lay a proper foundation for a document, a party must present evidence that shows the document is what it purports to be." *Id*. The party can authenticate the

document by providing an affidavit or by presenting testimony of a witness with sufficient personal knowledge of the document. *Id*. Additionally, as a business record, Ray must lay a proper foundation by showing the report was made (1) in the regular course of business, and (2) at or near the time or event of the occurrence. *US Bank, Nat. Ass'n v. Avdic*, 2014 IL App (1st) 121759 (2014), ¶ 23. Here, Ray failed to depose any representative from Goode Plumbing to authenticate the report or establish it as an admissible business record. Therefore, the plumbing report is inadmissible.

¶ 32    Ray then argues that conflicting deposition testimony regarding whether Gebhardt re-caulked Carlson's guest bathroom tub is critically important to her claim. We disagree. As previously stated, there is no evidence in the record the leak originated anywhere in Carlson's unit, including his guest bathroom. Additionally, the plumbing report, on which Ray relies, mentioned Carlson's master bathroom as the possible source of the leak, not his guest bathroom. New caulking in the guest bathroom alone does not establish the leak came from Carlson's unit. Therefore, whether Gebhardt or someone else re-caulked Carlson's guest bathroom is immaterial to Ray's claim.

¶ 33    Finally, Ray argues she presented a factual basis that would arguably entitle her to a favorable judgment. Specifically, she maintains that she introduced circumstantial evidence showing the source of the leak originated in Carlson's guest bathroom. We disagree.

¶ 34    Circumstantial evidence may be sufficient for a plaintiff to survive a motion for summary judgment when:

"an inference may be reasonably drawn from it. Facts, however, will not be established from circumstantial evidence where more than one conclusion can be drawn. [Citation.] If plaintiff relies upon circumstantial evidence to establish proximate cause to defeat a motion for summary judgment, the circumstantial evidence must be of such a nature and so related as to make the conclusion more probable as opposed to merely possible." *Majetich*, 389 Ill. App. 3d at 224–25.

¶ 35 Here, the circumstantial evidence against Carlson does not support the conclusion that a leak originating in his unit was more probable than not. While it is undisputed that a leak occurred from above Ray's unit and Carlson resides directly above Ray's unit, no plumbing expert identified the source of the leak and none concluded it came from Carlson's unit. From this evidence, it is possible Carlson's unit was the source of the leak, but it is also possible it was not. When the proven facts demonstrate the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion is a matter of speculation, conjecture, and guess, and the trier of fact cannot be permitted to make that inference. *Mann v. Producer's Chemical Co*., 356 Ill. App. 3d 967, 974 (2005).

¶ 36 Ray relies on *Deliberto v. Stahelin*, 171 Ill. App. 3d 355 (1988), to argue she has come forward with circumstantial evidence allowing her to avoid summary judgment. In *Deliberto*, the plaintiff was a passenger in a vehicle involved in a rollover accident as it drove around a curve. *Id*. at 356. The road conditions were otherwise dry that day, but plaintiff alleged the car skidded on water present on the road that originated from a sprinkler system. *Id*. The plaintiff sued defendants—owner of the office building and the installer of the sprinkler system—for

negligence, and both defendants filed motions for summary judgment. *Id.* The owner of the office building argued that plaintiff "offered nothing more than speculation or conjecture that water from the sprinkler system caused the accident." *Id*. at 356-57. The sprinkler installation company argued that "plaintiff failed to show that any act" by it "caused or contributed to the presence of water on the roadway." *Id*. at 357. The trial court granted both motions and held "that there were no genuine issues of material fact as to either defendant." *Id*.

¶ 37    On appeal, the appellate court noted the plaintiff had offered deposition testimony that the vehicle began to slide when it encountered wet pavement as it rounded a curve, and the water was coming from the defendants' sprinklers. *Id*. at 358. The plaintiff also presented testimony from an accident investigation and reconstruction expert who testified that a large amount of accumulated water could have impacted steering or could have created a tripping mechanism. *Id*. at 359. The defendant property owner argued the plaintiff had presented no more than speculation or conjecture that water from the sprinkler system caused the accident and summary judgment was proper. *Id*. at 360. The appellate court noted the occurrence witnesses testified they saw water on the road and the car slid or fishtailed prior to rolling over. *Id*.

¶ 38    The appellate court reversed, holding that plaintiff's evidence "raised material factual issues as to the presence, amount, and extent of water on the roadway at the time of the accident, as well as the role any such water may have played in causing the accident." *Id*. at 359. The appellate court stated, "all the evidence taken together could lead a fair-minded person to more than one conclusion or inference," precluding summary judgment. *Id*.

¶ 39        The present case is distinguishable from *Deliberto*. In *Deliberto*, the plaintiff provided testimony from occurrence witnesses establishing the presence of water and expert testimony that water on the road could have caused the car to go out of control. *Id*. at 360. Here, Ray provided no witness or expert testimony establishing a leak in Carlson's guest bathroom. In fact, she admits her case against Carlson lies in "physics and common sense." However, without any support, "physics and common sense" is simply her own conjecture. Therefore, the circumstantial evidence Ray presents did not provide a factual basis that would arguably entitle her to a favorable judgment and the circuit court's grant of summary judgment to Carlson was proper.

¶ 40                                            CONCLUSION

¶ 41        For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 42        Affirmed.